SYNERGISTIC INTERNATIONAL, LLC, Plaintiff–Appellee,

v.

Jody Fine KORMAN, individually and d/b/a The Windshield Doctor, d/b/a A Windshield Doctor, d/b/a Glass Doctor, Defendant–Appellant,

and

Darin Blatner; Steven Alan Korman, Defendants.

No. 05–2295.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 19, 2006.

Decided Nov. 30, 2006.

**ARGUED:** John Warren Hart, Beaton & Hart, P.C., Virginia Beach, Virginia, for Appellant. William Merrill Bryner, Kilpatrick Stockton, L.L.P., Winston–Salem, North Carolina, for Appellee. **ON BRIEF:** Christopher P. Bussert, James H. Sullivan, Kilpatrick Stockton, L.L.P., Atlanta, Georgia, for Appellee.

Before WILLIAMS and KING, Circuit Judges, and DEVER, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion. Judge KING wrote the opinion, in which Judge WILLIAMS and Judge DEVER joined.

## OPINION

KING, Circuit Judge:

Defendant Jody Fine Korman appeals from the district court's award of summary judgment and damages to plaintiff Synergistic International, LLC, in this trademark dispute. *See Synergistic Int'l, LLC v. Korman,* 402 F.Supp.2d 651 (E.D.Va. 2005) (the *"Opinion"*). Korman makes two contentions of error: first, that the court erred in ruling that Korman's trademark, "THE WINDSHIELD DOCTOR," infringed Synergistic's trademark, "GLASS DOCTOR®"; and second, that the court erred in awarding more than $142,000 in damages to Synergistic. As explained below, we affirm on the liability ruling, but vacate the court's award of damages and remand.

### I.

### A.

Synergistic is a nationwide franchiser and operator of a glass installation and repair business, doing business under the trade name "GLASS DOCTOR®."[1] On May 31, 1977, Synergistic's predecessor-in-interest (a company called Glass Doctor, Inc.) received a federal service mark from the United States Patent and Trademark Office (the "PTO") for "GLASS DOCTOR" in connection with the "installation of glass in buildings and vehicles." Stipulations ¶ 31.[2] Synergistic's "GLASS DOCTOR®" stores install, as well as repair, glass in both buildings and vehicles, and its trademark has been used since 1991 in connection with the windshield repair aspect of its business. Ninety to ninety-five percent of Synergistic's business involves windshield repair and installation, performed through mobile facilities that travel to its customers' locations.

The "GLASS DOCTOR®" mark has become incontestable under the Lanham Act, specifically the provisions of 15 U.S.C. § 1065, in that it has been continuously used in commerce for more than five

---

**1.** The facts underlying this appeal are drawn primarily from stipulated facts in the district court (the "Stipulations") and Korman's testimony during the court's one-day trial on remedies. The Stipulations, found at J.A. 479–87, were spelled out in the court's "Order of Final Pretrial Conference" of August 29, 2005. (Citations to "J.A. ——" refer to the Joint Appendix filed in this appeal.)

**2.** Throughout this opinion, we use the terms "federal service mark," "trademark," and "mark" interchangeably. These terms refer to a mark used in commerce that is registered by the PTO and placed on the PTO's official list of trademarks, called the "principal register."

years since its initial PTO registration.[3] The parties have stipulated that Synergistic's "GLASS DOCTOR®" mark qualifies for legal protection under the Lanham Act. *See* Stipulations ¶ 31. The PTO issued the "GLASS DOCTOR®" registration on the ground that the mark is inherently distinctive.[4] As a condition thereof, however, the PTO required Synergistic to disclaim an exclusive right in the word "GLASS," apart from its use in its mark. Therefore, the dominant word of Synergistic's "GLASS DOCTOR®" mark is "DOCTOR." Although Synergistic and its predecessors-in-interest have renewed the "GLASS DOCTOR®" registration several times since the PTO's initial approval in 1977, they have never updated the application; therefore, their registration of "GLASS DOCTOR®" does not specifically identify the mark's use in connection with the repair of windshields. Synergistic has used the "GLASS DOCTOR®" mark in nationwide advertising, but it did not enter the Virginia Beach, Virginia, area—or use its "GLASS DOCTOR®" mark there—until January 2005, when it decided to operate a "GLASS DOCTOR®" store in Virginia Beach.

Korman, on the other hand, started her business, which she called "THE WINDSHIELD DOCTOR," in Virginia Beach in 1987.[5] Since its inception, Korman's business has been engaged in windshield repair; her business does not install any glass. Korman's business is mobile, in that she normally travels to her customers' locations to provide windshield repair services. She advertises her business in the telephone yellow pages and through fliers and business cards. In 2000, Korman used the name "GLASS DOCTOR" as a single line listing in the telephone book. Unaware of Synergistic's "GLASS DOCTOR®" mark or business, Korman decided to use the name "GLASS DOCTOR" so that she could receive an additional entry in the yellow pages. On December 9, 2003, Korman obtained a federal service mark from the PTO for "THE WINDSHIELD DOCTOR," for use in connection with "repair service, namely, vehicle windshield repairs for cracks, chips and stars in windshields." Stipulations ¶ 23. In order to obtain her PTO registration, Korman was required to disclaim any use of the word "WINDSHIELD," apart from "THE WINDSHIELD DOCTOR" mark. As a result, the dominant word in Korman's "THE WINDSHIELD DOCTOR" mark is "DOCTOR," the same dominant word used in Synergistic's "GLASS DOCTOR®" mark.

On August 25, 2004, Synergistic's lawyer sent Korman a cease and desist letter, complaining of her use of the name "GLASS DOCTOR" and her "THE WINDSHIELD DOCTOR" mark. Synergistic was then contemplating a move into

---

**3.** The Lanham Act was enacted in 1946 to provide government protection for trademarks by prohibiting infringements upon the rights of trademark holders. *See* Pub.L. No. 79–489 (1946). The Act is codified at 15 U.S.C. §§ 1051–1127.

**4.** The PTO is authorized, pursuant to 15 U.S.C. § 1052(f), to register a trademark that is distinctive. "An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Synergistic's "GLASS DOCTOR®" mark was registered without a showing of secondary meaning by the PTO, indicating that the PTO determined the "GLASS DOCTOR®" mark to be inherently distinctive on its face. *See* Stipulations ¶ 31.

**5.** Our use of Korman's "THE WINDSHIELD DOCTOR" mark in this opinion does not contain the registered symbol "®" because the district court, by its Opinion, exercised its authority under 15 U.S.C. § 1119 and cancelled the mark's registration.

the Virginia Beach area and wanted to preclude Korman's use of the names "GLASS DOCTOR" and "THE WINDSHIELD DOCTOR." In Synergistic's view, "THE WINDSHIELD DOCTOR" mark caused confusion among consumers because both Synergistic and Korman would list their businesses under the same heading in the telephone yellow pages. And, even though Korman offered only windshield repair services (in contrast to the repair and installation services provided by Synergistic's "GLASS DOCTOR®" stores), the businesses would be in competition with each other. Indeed, as stipulated here, potential customers made calls to Korman about windshield installation (rather than repair) services, and such potential customers had to decide whether to repair their windshields or have new ones installed. *See* Stipulations ¶ 41.

After receiving the cease and desist letter from Synergistic, Korman spoke to her father, who had previously used the name "GLASS DOCTOR" in a similar business he operated in Richmond, Virginia, between 1974 and 1989. Korman learned that her father had received the same kind of letter in 1989 from an unknown "GLASS DOCTOR" entity, asserting that he was not entitled to use that name. As a result, her father ceased using the name "GLASS DOCTOR" in his business, and the issue was not further pursued. When Korman received Synergistic's cease and desist letter in August 2004, she stopped using the name "GLASS DOCTOR." Despite the objection of Synergistic, however, she continued to use her own mark, "THE WINDSHIELD DOCTOR," believing it to be protected by her PTO registration.

### B.

Because of Korman's continued use of "THE WINDSHIELD DOCTOR" mark, Synergistic initiated this proceeding in the Eastern District of Virginia, on January 22, 2005. Synergistic alleged two Lanham Act claims, for trademark infringement under 15 U.S.C. § 1114 and for unfair competition under 15 U.S.C. § 1125(a). It also asserted two state law claims, for common law unfair competition and for unfair competition under the Virginia Consumer Protection Act, *see* Va.Code Ann. §§ 59.1–196 to –207. Synergistic's lawsuit sought cancellation, pursuant to the Lanham Act, of Korman's "THE WINDSHIELD DOCTOR" mark; an injunction prohibiting Korman from using the name "GLASS DOCTOR" as well as her "THE WINDSHIELD DOCTOR" mark; plus damages and attorney fees.

On August 2, 2005, after discovery, Korman filed a motion for summary judgment. Thereafter, on August 15, 2005, Synergistic filed a cross-motion seeking summary judgment. Before ruling on either motion, the district court conducted a pre-trial conference, and the parties agreed to the Stipulations. In the Stipulations, Synergistic admitted that it had not suffered any business losses in the Virginia Beach area prior to this proceeding, and it acknowledged being unaware of any complaint of actual confusion between the two businesses. *See* Stipulations ¶¶ 27–29. Synergistic asserted, however, that it was nevertheless entitled to damages from Korman for any costs it would incur informing the public about the differences between the two businesses, and it claimed that Korman had been unjustly enriched by her use of the name "GLASS DOCTOR" from June 1, 2000, to December 31, 2004.

Relying on the Stipulations and its interpretation of the applicable legal principles, the district court advised the parties, on September 9, 2005, that it would award summary judgment to Synergistic on all of its claims, federal and state, and that it would deny Korman's cross-motion for

summary judgment. The court then conducted a brief trial on September 19, 2005, for the sole purpose of assessing remedies. At trial, Synergistic called Korman to testify, and she was examined by counsel for both parties. Korman did not present any evidence beyond her own testimony.

Following the remedies trial, the district court issued its Opinion of October 20, 2005, from which this appeal emanates.[6] In analyzing Synergistic's four claims, the court determined that the Lanham Act claims for trademark infringement and unfair competition, as well as the two state law claims, required the same proof on liability. *See Opinion* at 656–57, 663–64. The court concluded that Synergistic's "GLASS DOCTOR®" trademark was the senior of the two marks (first in time of use and first to register with the PTO) and that it was a suggestive, strong mark, entitled to protection from the use of similar marks for similar products. *See id.* at 658–60. Because Korman's "THE WINDSHIELD DOCTOR" mark was similar to Synergistic's "GLASS DOCTOR®" mark, and had been used in connection with similar products, the court concluded that "THE WINDSHIELD DOCTOR" mark was likely to result in confusion by consumers and infringed on Synergistic's trademark rights. *See id.* at 658–63.

In addition to ruling on liability, the court made several findings relating to the remedies issue. First, it found that Korman did not act in bad faith in using the name "GLASS DOCTOR" or in using the "THE WINDSHIELD DOCTOR" mark. *See Opinion* at 665–66. Second, the court found that Synergistic had not suffered any actual damages from Korman's infringement activities. *See id.* at 666. Third, it found that this case was neither exceptional nor entailed bad faith infringement, and thus that attorney fees should not be awarded. *See id.* at 667.

By its Opinion, the district court awarded damages to Synergistic, in the sum of $142,084, on the Lanham Act claims. *See Opinion* at 666. This award represented Korman's profits, less certain costs and deductions, from June 1, 2000, through December 31, 2004—the period during which Korman had used the names "GLASS DOCTOR" and "THE WINDSHIELD DOCTOR" interchangeably. In so ruling, the court found that the financial remedy should be limited to the foregoing four-and-a-half year time period. *See id.*[7] The court observed, in making the damages award, that it had balanced the equities of the case. *See id.* It did not, however, specify any factors it had considered in that regard, other than Korman's net profit. The court also awarded Synergistic $500 on its state law Virginia Consumer Protection Act claim. *See id.* at 665–66. Finally, the court cancelled Korman's "THE WINDSHIELD DOCTOR" mark, pursuant to its authority under the Lanham Act,[8] and it awarded an injunction to Synergistic against Korman's future use of the name "GLASS DOCTOR" and her use of "THE WINDSHIELD DOCTOR" mark. *See id.* at 666–67.

---

6. The Opinion is found at J.A. 790–813.

7. Korman's gross sales for the relevant time period were $466,010, a sum deduced from her tax returns and interrogatories. Korman asserted that her sales were not all profit, however, and sought to deduct the sum of $323,926, representing the costs of running her business during the relevant period. Synergistic, on the other hand, asserted that Kor-

man's proper deductions were $284,275, resulting in a $38,651 discrepancy. The district court ultimately found that $142,084 was Korman's net profit during the applicable time frame. *See Opinion* at 666.

8. Section 1119 of Title 15, in pertinent part, vests a federal court with the authority to "order the cancellation of registrations."

Korman has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

■ In assessing a trademark dispute, we review de novo a district court's award of summary judgment. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir.2006). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted in a trademark dispute when the material, undisputed facts disclose a likelihood of confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 935 (4th Cir.1995). On the other hand, we review for abuse of discretion a district court's award of damages in a trademark dispute. *See* 15 U.S.C. § 1117(a) ("The court shall assess such profits and damages or cause the same to be assessed under its discretion."); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108–09 (4th Cir.1991). A district court has abused its discretion in making an award of damages if it was "guided by erroneous legal principles" or the award rested "upon a clearly erroneous factual finding." *Morris v. Wachovia Secs., Inc.*, 448 F.3d 268, 277 (4th Cir.2006) (internal quotation marks omitted).

## III.

Korman makes two contentions of error in this appeal. First, she maintains that the district court erred in concluding that the use of her mark, "THE WINDSHIELD DOCTOR," constituted trademark infringement and unfair competition on Synergistic's "GLASS DOCTOR®" mark. Second, she contends that the court abused its discretion in awarding more than $142,000 in damages to Synergistic pursuant to the Lanham Act. We assess these contentions in turn.

## A.

■ In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff is obliged to show the court that "it ha[d] a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir.1995).[9] In this proceeding, the parties have stipulated that Synergistic's mark is protectible because it is incontestable. *See* Stipulations ¶ 31. This stipulation of "incontestability provides a strong presumption in favor of the mark's predictability and validity," but it does not, in and of itself, establish the statutory requirement of likelihood of confusion. *Lone Star*, 43 F.3d at 933. Therefore, we are obligated to examine de novo whether the confusion element of Synergistic's claims has been satisfied. In assessing the likelihood of confusion issue,

---

**9.** Like the district court, we analyze Synergistic's claims under the applicable Lanham Act principles for infringement and unfair competition. *See Lone Star*, 43 F.3d at 930 n. 10 ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved.").

our Court has identified seven factors that should be considered:

(1) the strength or distinctiveness of the [plaintiff's] mark;

(2) the similarity of the two marks;

(3) the similarity of the goods and services that the marks identify;

(4) the similarity of the facilities that the two parties use in their businesses;

(5) the similarity of the advertising the two parties use;

(6) the defendant's intent; and

(7) actual confusion.

*Id.* at 933 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)). Not all of these factors will be relevant in every trademark dispute, and there is no need for each factor to support Synergistic's position on the likelihood of confusion issue. *See Pizzeria Uno*, 747 F.2d at 1527. We emphasized in *Pizzeria Uno*, however, that the first factor—the strength or distinctiveness of the plaintiff's mark—is important to an assessment of the confusion issue. *See id.* The parties in this dispute have understandably focused on that factor.[10]

Specifically, Korman contends that the district court erred in its ruling on the first factor in three ways: (1) in deciding that Synergistic's "GLASS DOCTOR®" mark was "suggestive" rather than "descriptive"; (2) in affording Synergistic's mark, even if it is suggestive, an overly broad scope of protection against others using similar trademarks for similar services; and (3) in failing to find that Synergistic's mark, even if it is suggestive, is nevertheless weak and subject to limited protection. We examine these assertions in turn.

**1.**

 Korman first contends on the confusion issue that Synergistic's "GLASS DOCTOR®" mark is "descriptive" rather than, as the district court found, "suggestive." Under the applicable principles, a mark submitted to the PTO for registration falls into one of "four groups in an ascending order of strength or distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *Pizzeria Uno*, 747 F.2d at 1527. We have recognized that the line between a "descriptive" mark and a "suggestive" mark is thinly drawn, and we have defined the distinction as follows:

[A] word or figure is descriptive if it identifies a characteristic or quality of an article or service, and a suggestive term is one which suggests rather than describes, some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of these goods.

*Id.* at 1528 (internal quotation marks omitted). As Judge Russell explained in *Pizzeria Uno*, "[g]enerally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Id.* (internal quotation marks omitted). The distinction between a "descriptive" mark and a "suggestive" mark is important, of course, because a mark's classification determines the level of protection it is entitled to receive. *See id.* at 1527. When a registered trademark contains a disclaimed word (here, the words "GLASS" in Synergistic's "GLASS DOC-

---

**10.** Although an analysis of the first factor is the most probative to this appeal, a court should generally evaluate a trademark dispute in light of all relevant factors. In this appeal, we agree with the district court's analysis on the other factors, which also supports its determination of infringement and unfair competition. *See Opinion* at 660–63.

TOR®" mark and "WINDSHIELD" in Korman's "THE WINDSHIELD DOCTOR" mark), a reviewing court must look mainly at the use of the dominant word ("DOCTOR" for both marks) in making its assessment of whether a mark is "suggestive" or "descriptive." *See id.* at 1529–30.

In determining that the "GLASS DOCTOR®" mark is "suggestive," the district court observed that the dominant word "DOCTOR" suggests "the characteristics or quality of healing, from which a consumer must imagine that 'healing glass' means repairing or replacing." *Opinion* at 659. Korman, on the other hand, asserts that the court erred because the dominant word is only a "descriptive" one, in light of the accepted dictionary definition of "doctor." She asserts that "doctor" means "to restore to good condition" or "to repair." According to Korman, the dominant word "DOCTOR" in Synergistic's mark stands for repairing glass or windshields, and it thus is "descriptive" only, as the word "DOCTOR" in the mark connotes "repair," without the use of any imagination.

In these circumstances, we agree with the district court that Synergistic's "GLASS DOCTOR®" mark is properly deemed "suggestive." In this regard, we are obliged to defer to the determination of the PTO, which constitutes "prima facie evidence of whether the mark is descriptive or suggestive." *Lone Star,* 43 F.3d at 934. If the PTO believes a mark to be "descriptive," the registrant must establish some secondary meaning before it grants registration. *See id.* If the PTO did not require proof of secondary meaning, it has presumptively determined the mark to be "suggestive." *See id.* This presumption, however, can be rebutted by a party defending against an infringement claim. *See id.* Here, the parties have stipulated that Synergistic's "GLASS DOCTOR®" mark was registered by the

PTO without any proof of secondary meaning, and that the PTO determined the "GLASS DOCTOR®" mark to be "suggestive." *See* Stipulations ¶ 31. As a result, Synergistic is entitled by law to the rebuttable presumption that its "GLASS DOCTOR®" mark is suggestive. *See Lone Star,* 43 F.3d at 934. And, although Korman had the opportunity to rebut the presumption, she failed to do so.

Indeed, the public is more likely to view the word "doctor" to mean "healing," as Synergistic maintains, rather than to connote "repair," as Korman asserts. *See CareFirst,* 434 F.3d at 267 (concluding that decisions on likelihood to confuse should be viewed in light of what consumers perceive, not " 'in a prolonged and minute comparison of the conflicting marks in the peace and quiet of judicial chambers' " (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:58 (4th ed.2005))). In viewing the word "doctor" to mean "healing," some imagination is necessary in order to deduce that "healing" applies to the repair or installation of glass and windshields. And, because the use of imagination is essential to an understanding of the real meaning behind Synergistic's "GLASS DOCTOR®" mark, the district court properly concluded that the "GLASS DOCTOR®" mark was "suggestive," rather than "descriptive."

### 2.

Korman's fallback contention on the confusion issue is that, even though Synergistic's "GLASS DOCTOR®" mark may be suggestive, the district court should have limited the scope of the mark's protection to the context in which it was registered. Here, Synergistic's "GLASS DOCTOR®" mark was registered with the PTO for use in connection with the "installation of glass in buildings and vehicles." Stipulations ¶ 31. As a result, Korman

contends that Synergistic cannot own the exclusive right to use its "GLASS DOC-TOR®" mark in connection with the repair of windshields, in that it was never registered for that purpose. In support of this assertion, Korman relies on the Third Circuit's ruling in *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir.1985). There, the court concluded that the purpose behind requiring business owners to register trademarks "is best served by limiting the impact of a registered mark to only the specific terms of the registration so as to allow parties interested in marketing products with a new mark to rely as fully as possible on the registry." *Id.* at 1396.

We, however, have not adopted such a narrow view of a trademark's registration. As Judge Russell explained in *Pizzeria Uno*, a suggestive mark is entitled to protection against "the same or a confusing mark on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trademark owner." 747 F.2d at 1527 (emphasis removed) (internal quotation marks omitted). As a result, the PTO's registration of a suggestive mark should be broadly construed, and the appropriate reading is not limited to the text of the mark's registered purpose. *See id.*[11] In this regard, it is apparent that windshield repair and windshield installation are related services. In fact, the parties have stipulated that potential customers have called Korman assuming that her business also installs windshields. *See* Stipulations ¶ 41. In these circumstances, the district court did not improperly afford Synergistic's "GLASS DOCTOR®" mark an overly broad scope of protection against Korman's use of a similar trademark for similar services.

3.

Korman finally contends, on the confusion issue, that even though Synergistic's "GLASS DOCTOR®" mark is suggestive, it must nevertheless be deemed "weak" because the dominant word "DOCTOR" is commonly used by businesses providing similar services. A determination that a challenged mark is suggestive or descriptive is, of course, only the first step in an analysis of the likelihood of confusion issue. *See Pizzeria Uno*, 747 F.2d at 1530–31. After making the initial determination, a court is obliged to assess the strength or weakness of the mark. *See CareFirst*, 434 F.3d at 269. If the mark is found to be "weak," it is entitled to less protection from potential infringers. *See id.* at 270. As we emphasized in *CareFirst*, "[t]he strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *Id.* at 269. The strength issue is thus properly evaluated on the basis of the mark's conceptual and commercial strength. *See id.*

A court should measure a mark's conceptual strength by focusing on "the linguistic or graphical 'peculiarity' of the mark ... considered in relation to the product, service, or collective organization to which the mark attaches." *CareFirst*, 434 F.3d at 269. In assessing the conceptual strength of a challenged mark, the frequency with which a linguistic or graph-

---

**11.** Certain of our sister circuits have also concluded that a trademark's protection is not limited to the purposes specified in its PTO registration, and that such protection applies to similar goods if another trademark is likely to cause confusion. *See, e.g., E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1530 (11th Cir.1985); *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 623 (5th Cir.1963).

ical term is used in other trademark registrations must be carefully examined. *See id.* at 270 (concluding that CareFirst's mark, used in connection with HMO health care organization, was weak because many health care businesses used some variation of words "care" and "first" in their marks); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 93–94 (4th Cir.1997) (recognizing that word "PETRO" is commonly used in marks dealing with fuel stations; therefore, mark using "PETRO" within fuel service industry is weak); *Arrow Distilleries v. Globe Brewing Co.*, 117 F.2d 347, 351 (4th Cir.1941) (observing that word "arrow" is commonly used in marks in beer industry; therefore, mark using that word within beer industry is weak).

■ Although the district court did not specifically assess the conceptual strength of Synergistic's "GLASS DOCTOR®" mark, we nevertheless see it as conceptually strong. First, Korman admitted that, although the word "doctor" is commonly used in other industries, it is not commonly used in businesses dealing with glass or windshield installation and repair. *See* Interrogatory Responses ¶ 19.[12] And Korman has presented no evidence that similar installation and repair businesses use the word "doctor" in their marks. Second, "[t]he commercial-strength inquiry, by contrast, looks at the marketplace and asks if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *CareFirst*, 434 F.3d at 269 (internal quotation marks omitted). By its Opinion, the court determined Synergistic's mark to be commercially strong, in that Synergistic has done extensive national advertising and supports a 133–unit franchise busi-

ness. *See Opinion* at 659–60. Korman does not contest this aspect of this dispute, and we accept the conclusion that Synergistic's "GLASS DOCTOR®" mark is commercially strong.

■ In these circumstances, we agree with the district court that Korman infringed on Synergistic's legitimate rights under the Lanham Act because the "THE WINDSHIELD DOCTOR" mark created a likelihood of confusion with Synergistic's "GLASS DOCTOR®" mark. As a result, we affirm the court's finding of liability against Korman on Synergistic's Lanham Act and state law claims.

### B.

Korman next maintains that, even if she is liable under the Lanham Act, the district court erred in its award of damages to Synergistic under the Act. In this regard, she maintains that the court, in contravention of applicable law, failed to apply the appropriate equitable principles in making the damages award. Section 1117(a) of Title 15 provides, as to Lanham Act claims, that a successful plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Importantly, it also provides that such damages "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). In general, however, the Lanham Act gives little guidance on the equitable principles to be applied by a court in making an award of damages.

■ By its Opinion, the district court awarded damages of more than $142,000 to Synergistic, but did not specify the equitable factors it had utilized in making such an award. The court summarily

---

**12.** Korman's Interrogatory Responses are found at J.A. 110–30.

stated, however, that the equities had been balanced. *See Opinion* at 666. In making a damages award under the Lanham Act, the Third and the Fifth Circuits have identified six factors to guide the process. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir.2005); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir.2002). As those courts have spelled out, these factors include:

(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Quick Techs.*, 313 F.3d at 349 (internal quotation marks omitted); *see also Banjo Buddies*, 399 F.3d at 175.

█ We agree with Korman that the district court abused its discretion in making the damages award, and that the foregoing factors are appropriate for consideration in connection with damages issues in Lanham Act litigation. And we will briefly discuss each of these factors. The first—whether the defendant had an intent to confuse or deceive—addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith. *See Banjo Buddies*, 399 F.3d at 174–75; *Quick Techs.*, 313 F.3d at 349. In her appeal, Korman contends that a willful infringement is an essential predicate for any damages award, and that, in its absence here, the court abused its discretion in making such an award. As Korman

emphasizes, the court specifically found that she neither acted in "bad faith" nor was the use of her "THE WINDSHIELD DOCTOR" mark "malicious, fraudulent, willful or deceitful." *Opinion* at 665–66. We agree, however, with the Third and Fifth Circuits that although willfulness is a proper and important factor in an assessment of whether to make a damages award, it is not an essential predicate thereto. *See Banjo Buddies*, 399 F.3d at 174–75; *Quick Techs.*, 313 F.3d at 349. In other words, a lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award.[13]

█ The second factor identified above—whether sales have been diverted—involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities, and the extent to which the plaintiff had entered the market area where the infringement occurred. Korman contends that, in this dispute, the district court was not entitled to award damages because Synergistic had not conducted any business in the Virginia Beach area during the period of infringement. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 365 (2d Cir.1959) (observing that court should not assess damages for trademark infringement if plaintiff has not entered defendant's market area). We are satisfied that, in this situation, Synergistic's non-entry into the Virginia Beach marketplace is an important factor with respect to the assessment of any damages. The fact that a plaintiff had not entered the rele-

---

**13.** Korman's willfulness contention may have been more persuasive prior to a 1999 amendment to the Lanham Act. Prior to the amendment, there was no reference in § 1117(a) to the term "willful." *See* Pub.L. No. 106–43 (1999). The 1999 amendment replaced the language "or a violation under section 43(a)

[§ 1125(a)]" with the phrase "a violation under section 43(a) [§ 1125(a)], *or a willful violation under section 43(c) [§ 1125(c)]." Id.* (emphasis added). In light of this revision, we agree that willfulness is not an essential prerequisite for a damages award, but that it remains a highly pertinent factor.

vant marketplace when the infringement was ongoing, in combination with the fact that no sales were diverted, should weigh against an award being made.

The third of the six factors—the adequacy of other remedies—addresses whether another remedy, such as an injunction, might more appropriately correct any injury the plaintiff suffered from the defendant's infringement activities. If an injunction is an adequate remedy, this factor should weigh against a damages award. *See Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir.1994) (concluding that "an accounting will be denied with a trademark infringement action where an injunction will satisfy the equities of the case" (internal quotation marks omitted)). Here, the court granted injunctive relief against Korman, prohibiting her from using "THE WINDSHIELD DOCTOR" mark and the name "GLASS DOCTOR" with her windshield repair business. *See Opinion* at 666–67.

The fourth factor—unreasonable delay by the plaintiff in asserting its rights—addresses the temporal issue of whether the plaintiff waited too long, after the infringement activities began, before seeking court relief. A substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief should weigh against an award of damages. The fifth factor—the public interest in making the infringing misconduct unprofitable—addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty.[14]

The sixth and final factor—whether the situation involved a case of "palming off"—involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products were really those of the plaintiff. *See Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 695 (5th Cir.1992) (concluding that "palming off" did not occur when there was no basis for inferring that profits received by defendant were attributable to infringement). We agree that, if "palming off" is shown, such activity should weigh in favor of a damages award.

In conclusion, a trial court, in assessing the issue of damages under 18 U.S.C. § 1117(a), should weigh the equities of the dispute and exercise its discretion on whether an award is appropriate and, if so, the amount thereof. In each instance, of course, the court should explain its reasoning and the impact of the relevant factors. And, although each trademark dispute is fact specific, the foregoing factors, as well as others that may be relevant in the circumstances, should guide a court's consideration of the damages issue.

Having provided this guidance to the district court, we vacate its Opinion as to the Lanham Act damages award and remand for further proceedings. We affirm the court's liability ruling, however, and observe that its injunction ruling, its cancellation of Korman's "THE WINDSHIELD DOCTOR" mark, its denial of attorney fees, and its award of $500 to Synergistic on the Virginia Consumer Protection Act claim stand.[15]

---

14. As we have noted, § 1117(a) of Title 15 specifically provides that any damages award "shall constitute compensation and not a penalty."

15. Korman initially appealed the district court's award of $500 to Synergistic under the Virginia Consumer Protection Act. Korman abandoned this issue at oral argument, however, and we do not address it.

## IV.

Pursuant to the foregoing, we affirm in part, vacate in part, and remand.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*