UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1664
(3:07-cv-00168-DSC)

BELK, INCORPORATED; BELK INTERNATIONAL, INCORPORATED,

Plaintiffs – Appellants,

v.

MEYER CORPORATION, U.S.; MEYER INTELLECTUAL PROPERTIES LIMITED,

Defendants – Appellees.

O R D E R

The Court amends its opinion filed May 8, 2012, as follows:

On page 18, last line of text above footnote –– the parenthetical date "(Jan. 25, 2010)" is corrected to read "(Jan. 25, 2012)."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BELK, INCORPORATED; BELK
INTERNATIONAL, INCORPORATED,

*Plaintiffs-Appellants,*

v.

MEYER CORPORATION, U.S.; MEYER
INTELLECTUAL PROPERTIES LIMITED,

*Defendants - Appellees.*

No. 10-1664

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
David S. Cayer, Magistrate Judge.
(3:07-cv-00168-DSC)

Argued: January 25, 2012

Decided: May 8, 2012

Before DUNCAN, DAVIS, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Duncan and Judge Keenan joined.

## COUNSEL

**ARGUED:** W. Thad Adams, III, SHUMAKER, LOOP & KENDRICK, Charlotte, North Carolina, for Appellants. Dean A. Dickie, MILLER, CANFIELD, PADDOCK & STONE,

PLC, Chicago, Illinois, for Appellees. **ON BRIEF:** Rodrick J. Enns, ENNS & ARCHER, LLP, Winston-Salem, North Carolina, for Appellants. Andrew S. Chamberlin, Alex J. Hagan, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellees.

---

**OPINION**

DAVIS, Circuit Judge:

In May and June 2010, Appellee Meyer Corporation, U.S., ("Meyer")[1] and Appellants Belk, Incorporated, and Belk International, Incorporated (collectively, "Belk"), clashed in a nine-day trial with eighteen witnesses who educated the jury at length about the design, creation, marketing and profitability of high-end cookware. At the conclusion of trial, the district court entered judgment in accordance with the jury's verdict in favor of Meyer on its claims of trade dress infringement, *see* 15 U.S.C. § 1125(a), and unfair and deceptive trade practices, *see* N.C. Gen. Stat. § 75-1.1.[2] The court trebled the damages amount found by the jury to $1,260,000 pursuant to N.C. Gen. Stat. § 75-16 and denied Belk's remaining requests for declaratory relief.

Belk failed to file a postverdict motion pursuant to either Federal Rule of Civil Procedure 50(b) or 59 and instead

---

[1]There are two Appellees in this case. Meyer Corporation, U.S. ("Meyer U.S.") is a Delaware corporation that supplies the cookware, and Appellee Meyer Intellectual Properties Limited ("Meyer IP") is a British Virgin Islands company that holds several patents related to the "Anolon Advanced" cookware at issue in this case. Meyer U.S. is the sole authorized licensee of the various patents Meyer IP holds in the U.S. retail market. The two entities are referred to collectively here as "Meyer."

[2]The parties consented to the jurisdiction of a magistrate judge for all purposes, including the entry of final judgment. For ease of reference throughout this opinion, we refer to the magistrate judge as the district court.

directly appealed, timely to be sure, to this court. On appeal, Belk asserts the district court erred in numerous respects, including its failure to recognize the insufficiency of the evidence to support Meyer's claims and other errors relating to evidentiary and legal rulings. Finding no error on the issues that are properly preserved, we affirm the judgment of the district court.

## I.

## A.

Meyer is a supplier of cookware products designed, developed and manufactured through Meyer-affiliated companies, including cookware marketed under the brand name "Anolon Advanced." Belk owns and operates retail department stores in the southeastern United States that sell a variety of items, including kitchen appliances and cookware products. Belk is a former customer of Meyer, having previously sold Meyer's other branded lines of cookware.

In 2007, Belk began selling its own private-label cookware, under license from the Biltmore Company, the entity owning various trademarks, copyrights and other proprietary rights associated with "Biltmore House" and "Biltmore Estate," the famous private residence in North Carolina ("the Biltmore line"). Meyer discovered that Belk was selling the Biltmore line in its stores, and, through a so-called cease-and-desist letter, notified Belk that it believed the line infringed Meyer's trade dress in the Anolon Advanced line and rights in design patents pertaining to that line, and that Belk was engaged in false advertising, unfair competition and numerous other commercial torts.

Thus, the inevitable race to the courthouse was triggered. Belk subsequently filed a civil action in the United States District Court for the Western District of North Carolina seeking a declaratory judgment that the Biltmore line did not infringe

certain Meyer-held patents or Meyer's trade dress, that certain of Meyer's patents were not enforceable, and that Belk did not engage in false advertising, unfair competition, or commit any commercial torts against Meyer by marketing, advertising and selling the Biltmore line. Meyer filed a civil action against Belk in the United States District Court for the Northern District of Georgia, alleging claims of patent infringement, trade dress infringement and unfair and deceptive trade practices under state law. Meyer's action was transferred to the district court below and consolidated with Belk's declaratory judgment action.

After a nine-day trial, the jury found that Belk infringed Meyer's trade dress in the Anolon Advanced line and determined that Meyer suffered $420,000 in damages as a result of Belk's trade dress infringement. With respect to Meyer's claim under North Carolina law for unfair and deceptive trade practices, the jury rendered a verdict in favor of Meyer, finding that

- Belk distributed, marketed and sold a private-label cookware line, the Biltmore line, that was "deceptively similar" to Meyer's Anolon Advanced cookware line;

- Belk did so after receiving product, sales and market information, as well as images and samples of products of the Anolon Advanced line;

- Belk purchased a cookware design from a third party that was "deceptively similar" to the Anolon Advanced line, even after learning that proposed designs provided by the third party were being sold by Meyer;

- Belk's conduct was in commerce or affected interstate commerce; and

- Belk's conduct was the proximate cause of Meyer's injury.[3]

After the jury rendered its verdict, the district court observed that the jury had made its findings regarding Meyer's claim for unfair and deceptive trade practices and invited argument from the parties as to whether those findings were sufficient as a matter of law to establish that Belk had engaged in unfair and deceptive trade practices under North Carolina law. After argument, which we discuss below in detail, the district court determined that, based on the jury's findings, Belk engaged in unfair and deceptive trade practices as a matter of law and that Meyer was entitled to treble damages.

On June 8, 2010, the court entered judgment in accordance with the jury's verdict; it denied the remainder of Belk's requests for declaratory relief and trebled the award of damages found by the jury, $420,000, to $1,260,000.

In the twenty-eight day period following the entry of judgment, which is the time limit for filing a renewed motion for judgment under Rule 50(b), Belk filed only one motion in the district court, namely, a motion seeking the grant of a supersedeas bond and stay of judgment pending appeal. Belk did not file a motion under Rule 50(b) during that period.

## B.

Given the centrality of issue preservation in this appeal, we lay out clearly the challenges Belk raises on appeal. First, Belk contends that the district court erred in denying its motion for judgment as a matter of law because the evidence is insufficient to show trade dress infringement ("sufficiency of the evidence challenge"). In the course of discussing the

---

[3]Belk's request for a declaratory judgment that it did not infringe certain Meyer-held patents was dismissed prior to trial.

insufficiency of the evidence, particularly on whether the trade dress had acquired secondary meaning, Belk raises a second contention, namely, that Meyer's expert was not properly qualified to testify with respect to trade dress consumer surveys and that his testimony and survey were scientifically unreliable ("evidentiary challenges").

Third, Belk contends that the district court erred with regard to the state unfair and deceptive trade practices claim ("UDTPA challenges"). In particular, Belk contends that the district court erred in two respects: (1) tendering unfair competition issues to the jury that as a matter of law are not unfair and deceptive trade practices;[4] and (2) denying its motions for judgment as a matter of law because Meyer failed to prove that Belk intentionally infringed Meyer's trade dress; Belk argues that, as a matter of law, N.C. Gen. Stat. §§ 75-1.1 and 75-16 do not apply where there has been an "unintentional" infringement of an unregistered trademark, i.e., no finding of intent.

Fourth, Belk attacks the award of damages ("damages challenges"). In particular, Belk argues that the district court erred in two respects: (1) allowing recovery of Belk's profits without considering certain equitable factors required under 15 U.S.C. § 1117(a) and *Synergistic International, LLC v. Korman*, 470 F.3d 162 (4th Cir. 2006); and (2) treating Belk's profits as damages subject to trebling under N.C. Gen. Stat. § 75-16 in the absence of any pleading[5] of actual damage to

---

[4]In the heading of this portion of its opening brief, Belk also contends that the district court erred in tendering unfair competition issues to the jury that were not pled as an unfair and deceptive trade practice. This issue is waived because Belk fails to develop this argument to any extent in its brief.

[5]In the heading of this portion of its opening brief, Belk also contends that there was an absence of "[p]roof" of actual damage to Meyer. Appellant's Br. 61. Because this challenge, in particular, is not developed in the brief and is in the nature of a sufficiency of the evidence challenge, we decline to address it for the reasons expressed *infra* in Part II.

Meyer.[6] Belk seeks only the reversal of the district court's judgment.

---

[6]Belk has waived its challenge to any jury instructions by inadequately presenting the challenge in its opening brief as well as by failing to preserve the issue for appellate review by neglecting to make timely and sufficient objections to the court's charge below.

The argument section of an appellant's opening brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A); *see, e.g.*, *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1140 (2010). In two places in its brief, as well as in the standard of review and statement of the issues sections, Belk makes reference to alleged instructional errors. In support of its sufficiency of the evidence challenge, Belk argues that the district court committed plain error by denying one of its requested jury instructions. *See* Appellant's Br. 46 ("Belk sought a jury instruction on 'esthetic functionality,' which was refused by the court without explanation. This was plain error.") (citation omitted). Second, in support of its argument regarding the relationship between the element of intent and the state law claim, Belk argues that the court refused to instruct the jury on intent. *See id.* at 53-54 ("Belk tendered jury instructions; and a specific jury issue on intentional infringement . . . . The court refused to give the jury an issue on intentional infringement as sought by Belk.") (citation omitted). Belk, however, fails to provide a clear argument on why or how the district court erred in giving or omitting instructions and neglects citation to any supporting authorities. Even more importantly, Belk fails to provide a record citation to where it objected to any given or omitted jury instruction, pointing only to the portions of the Joint Appendix in which it submitted proposed instructions on "esthetic functionality" and intentional infringement, as well as to a proposed verdict form with an intentional infringement question. Thus, the issue is waived for failure to comply with Fed. R. App. P. 28(a)(9)(A).

Moreover, Belk's failure to object with the required specificity is detrimental in itself. "A party who objects to an instruction or the failure to give an instruction must do so *on the record*, stating *distinctly* the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1) (emphases added); *see also Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 112 (4th Cir. 1991) ("[T]o preserve an objection to the instructions to the jury, a party is required to point out specifically the nature of the objection."). *See generally Faigin v. Kelly*, 184 F.3d 67, 87 (1st Cir. 1999) ("When put to his mettle, it is the appellant's burden to establish that he has preserved such a claim of error and, relatedly, to furnish the court of

Meyer moves to dismiss the appeal, arguing that Belk's failure to move postverdict for judgment as a matter of law under Rule 50(b) or for a new trial under Rule 59 deprives us of "jurisdiction"[7] to hear Belk's appeal, or, in the alternative, the power to grant Belk the relief it seeks. Appellee's Motion to Dismiss 2. In its response brief, filed the same day as its motion to dismiss the appeal, Meyer argues in the alternative that the evidence is sufficient to support the judgment, as well as responds to Belk's other arguments.

In response to Meyer's motion to dismiss, Belk asserts that it was not required to make any postverdict motion and that, in the alternative, it substantially complied with Rule 50(b) in its postverdict oral argument. Belk further asserts that we have rejected the proposition that a party's failure to make a postverdict motion under Rule 50(b) prevents us from reviewing properly preserved assertions of error that do not challenge the sufficiency of the evidence. We address these issues in turn.

---

appeals with so much of the record of the proceedings below as is necessary to enable informed appellate review."). Our own search of the trial transcript, which is not included in the Joint Appendix, reveals that counsel for Belk only stated, when invited by the magistrate judge to put his arguments on the record regarding the verdict form and jury instructions,

> Your Honor, the judicial drift I get is that we're dealing with a work in being and so our motion would simply be to substitute the materials that we had submitted; and to the extent that those—the verdict form or the . . . proposed jury instructions were not accepted, we object and reserve our—whatever right we have otherwise.

Transcript of Trial Proceedings held on 6/3/10, at 41, *Belk, Inc. v. Meyer Corp., U.S.*, No. 3:07-cv-00168-DSC, ECF No. 266. This general invocation of proposed jury instructions is insufficient to preserve the issue for our review.

[7]Given our resolution of the issues in this case, we need not decide whether Belk's failure to file a Rule 50(b) motion deprives us of jurisdiction over the sufficiency of the evidence challenge. *See, e.g., Kelley v. City of Albuquerque*, 542 F.3d 802, 817 n.15 (10th Cir. 2008).

## II.

We first examine Belk's sufficiency of the evidence challenge and hold that Belk's failure to move pursuant to Rule 50(b) forfeits this challenge on appeal. In reaching our conclusion, we consider and reject Belk's contentions that *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006), does not apply to an award of profits under the Lanham Act and N.C. Gen. Stat. § 75-1.1 and that Belk "substantially complied" with Rule 50(b) during the postverdict oral colloquy with the judge. Appellant's Response to Motion to Dismiss ("Belk's Response to MTD") 10.

To challenge the sufficiency of the evidence in a civil jury trial on appeal, a party must comply with Federal Rule of Civil Procedure 50. The rule sets out two different stages for such a challenge. Rule 50(a) allows a party to challenge the sufficiency of the evidence before a case is submitted to the jury:

> (a) Judgment as a Matter of Law
>
> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
> >
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

> (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Rule 50(b), in turn, sets forth the requirements for challenging the sufficiency of the evidence after the jury verdict and entry of judgment:

> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial.
>
> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
>> (1) allow judgment on the verdict, if the jury returned a verdict;
>>
>> (2) order a new trial; or
>>
>> (3) direct the entry of judgment as a matter of law.

The rule tests the legal sufficiency of a claim, that is, assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim.

The rule has been explored on numerous occasions by the Supreme Court.[8] Most recently, in *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, the Supreme Court held that a party's "failure to comply with Rule 50(b) forecloses its challenge to the sufficiency of the evidence." 546 U.S. at 404. In that case, Unitherm filed suit against Swift-Eckrich, doing business as ConAgra, regarding a patent. *Id.* at 397. Before submission of the case to the jury, ConAgra moved for a directed verdict pursuant to Rule 50(a), asserting that the evidence was legally insufficient. *Id.* at 398. The district court denied that motion. *Id.* After the jury returned a verdict in favor of Unitherm, ConAgra failed to renew its motion for judgment as a matter of law pursuant to Rule 50(b) or to move for a new trial pursuant to Rule 59. *Id.* On appeal, ConAgra raised a sufficiency of the evidence challenge. *Id.* The Federal Circuit, applying the law of the Tenth Circuit, examined the sufficiency of the evidence challenge, vacated the judgment in favor of Unitherm and remanded for a new trial. *Id.* at 398-99.

In reaching its conclusion that ConAgra's failure to comply with Rule 50(b) foreclosed its sufficiency of the evidence challenge, the Supreme Court acknowledged that earlier precedent addressed "whether an appellate court may enter judgment in the absence of a postverdict motion, as opposed to whether an appellate court may order a new trial." *Id.* at 401-

---

[8]*See, e.g.*, *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217-18 (1947) ("In the absence of [a motion for judgment notwithstanding the verdict], we think the appellate court was without power to direct the District Court to enter judgment contrary to the one it had permitted to stand."); *Globe Liquor Co. v. San Roman*, 332 U.S. 571 (1948) (holding that a party's failure to file a Rule 50(b) motion deprives the appellate court of the power to order entry of judgment in favor of that party where the district court directed the jury's verdict); *Johnson v. New York, N.H. & H.R. Co.*, 344 U.S. 48 (1952) (holding that a party's failure to file a Rule 50(b) motion deprives the appellate court of the power to order the entry of judgment in favor of that party where the district court expressly reserved a party's preverdict motion for a directed verdict and then denied that motion after the verdict was returned).

02, 404. The Court found this distinction to be "immaterial." *Id.* at 402. "A postverdict motion is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'" *Id.* at 401 (quoting *Cone*, 330 U.S. at 216). Moreover, the Court explained, the requirement "'is . . . an essential part of the rule, firmly grounded in principles of fairness.'" *Id.* (quoting *Johnson*, 344 U.S. at 53).

We have recognized the import of Rule 50(b) and the Supreme Court's decision in *Unitherm*. In *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356 (4th Cir. 2008), we held that the appellant's sufficiency of the evidence challenge to a due process claim could not be entertained on appeal because the appellant had failed to move for judgment as a matter of law pursuant to Rule 50(b). 525 F.3d at 369-70. At the close of the evidence, the appellant moved pursuant to Rule 50(a) on all claims, and the district court reserved the preverdict motion with respect to the due process claim. *Id.* at 369. After the jury returned a verdict for the appellee on this claim, the court denied the Rule 50(a) motion and advised the parties that they had ten days to renew their motions for judgment as a matter of law. *Id.* Because the appellant failed to move postverdict for judgment as a matter of law, we concluded there was "'no basis for review.'" *Id.* at 370 (quoting *Unitherm*, 546 U.S. at 407).

We are not persuaded by Belk's argument that neither Rule 50(b) nor *Unitherm* applies in this specific context because the district court was required "to make a substantive postverdict determination" regarding the appropriateness of an award without being urged by either party to review the judgment. Belk's Response to MTD 3. Belk mistakenly confuses a judge's role in reviewing an award of profits pursuant to 15 U.S.C. § 1117(a) and deciding whether the jury's factual findings constitute unfair and deceptive trade practices as a matter

of law pursuant to N.C. Gen. Stat. § 75-1.1 with broader questions of viability with which Rule 50(b) is concerned. Requiring a judge to assay the former two issues before entering judgment does not necessitate the same extensive examination into the viability of a claim, that is, whether, in light of the evidence adduced at trial, the claim succeeds or fails as a matter of law. (The import of moving pursuant to Rule 50(b) to urge the court to examine the sufficiency of the evidence is particularly highlighted in a case of this nature, which spanned nine days and included eighteen witnesses.) Rather, these two inquiries are both more limited and different in nature. The Supreme Court has repeatedly stressed the importance of compliance with Rule 50(b), and we are unwilling to create an exception here.

We also reject Belk's contention that it substantially complied with Rule 50(b). To be sure, there is no requirement that the Rule 50 motion be in writing and be filed with the court; oral motions, in which a party specifically invokes the rule, or perhaps even colloquy with the court, fulfill the requirements of Rule 50 in some instances. *See Moran v. Raymond Corp.*, 484 F.2d 1008, 1010 n.1 (7th Cir. 1973) ("'Although it is said that the better practice is for the motion to be in writing, the rule makes no such requirement and an oral motion on the record will suffice.'") (quoting 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2353 (1971)). However, these oral exchanges must comply with the demands of the rule.

Indeed, as Belk argues, we are willing to "'look beyond the technical nomenclature'" and "consider 'the substance of the movant's contentions.'" Belk's Response to MTD 14-15 (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996)). The cases Belk cites in support, however, demonstrate a willingness to overlook "technical noncompliance" with procedural rules, including motions pursuant to Rule 50; they do not approve of complete noncompliance with the requirements of the rule.

*Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (internal quotation marks omitted) ("Rule 50(b) is construed liberally, and we may excuse 'technical noncompliance' when the purposes of the rule are satisfied."); *see also Travel All Over the World*, 73 F.3d at 1429 (dismissing argument that motion to dismiss must specify the Federal Rule of Civil Procedure under which it is made and be labeled "dispositive"); *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978) (dismissing argument regarding misstyling of motion); *Coons v. Indus. Knife Co.*, 620 F.3d 38, 41 (1st Cir. 2010) (motion labeled as Rule 59(e) motion correctly construed to be Rule 50(b) motion); *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998) ("[W]e cannot believe that any consequences should flow from a mislabeling of the defendants' postjudgment motion . . . . The motion was filed within the time limit for a 50(b) motion (which is the same as that for a 59(e) motion—ten days after entry of judgment) and it contained the information required for a 50(b) motion. That was good enough; captions do not control.").[9]

We are not so willing to overlook noncompliance with the requirements of the rule. If counsel moves orally before the case is submitted to the jury, counsel "must specify the judgment sought and the law and facts that entitle the movant to the judgment," Fed. R. Civ. P. 50(a)(2), and postverdict, counsel must sufficiently "renew[]" the same, Fed. R. Civ. P. 50(b). Indeed, we have recognized the caution with which we must proceed in determining whether a sufficiency of the evidence challenge made orally has been properly preserved. In *Miller v. Premier Corp.*, 608 F.2d 973 (4th Cir. 1979), the plaintiffs argued that the defendant had failed to properly pre-

---

[9]*See also, e.g.*, *Fred A. Smith Mgmt. Co. v. Cerpe*, 957 A.2d 907, 913 & n.3 (D.C. 2008) (considering renewed motion for directed verdict made in writing pursuant to Rule 50(a) to be "in substance" a Rule 50(b) motion); *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989) (motion for directed verdict sufficient when court interrupted and instructed defendants, who moved at close of all the evidence, to move after the verdict, and they did so).

serve a sufficiency of the evidence challenge due to the failure to move for a directed verdict with the required degree of specificity before moving for judgment notwithstanding the verdict. 608 F.2d at 979 n.3. Despite our recognition that plaintiff's contention was "serious and bothersome," we "conclude[d] that fairness require[d] consideration" of the sufficiency of the evidence challenge because the "[o]ral motions for 'dismissal' were made in a colloquy that is too confusing to permit confident assessment" of counsel's failure to observe Rule 50(a). *Id.*

While we do not deal directly with Rule 50(a) here, we cannot require the district court to read counsel's mind in determining whether the grounds of the Rule 50(a) motion have been sufficiently "renewed." The onus is on counsel to adequately convey his or her arguments and requests to the court, making an adequate record for meaningful appellate review.

Here, counsel moved orally for judgment as a matter of law under Rule 50(a) with some specificity after Meyer's presentation of the evidence. Regarding the infringement of trade dress claim, counsel specifically addressed the insufficiency of the evidence to prove functionality, acquired distinctiveness, likelihood of confusion, and trade dress. Counsel also raised concerns about profits under 15 U.S.C. § 1117(a), arguing that "profits is strictly an equitable issue for determination by the court" and that "there's no evidence from which the court could conclude as an equitable matter that [Meyer] ha[s] proven their entitlement to profits." J.A. 2254h-i. With regard to the state law claim, counsel argued that Meyer failed to allege that it had sustained an injury in North Carolina, that a claimant "cannot claim profits of the accused infringer," and that Meyer failed to allege damages. J.A. 2254j. Counsel also argued that an innocent infringer cannot violate the state unfair and deceptive trade practices act.

Counsel later moved at the close of all the evidence for judgment as a matter of law, renewing the earlier grounds.

Counsel stated, "Your Honor, the plaintiff renews its motion for judgment as a matter of law under Rule 50 for all the same reasons that were urged to the court at the close of defendant's case." J.A. 2342.

But counsel clearly failed to renew the motion in the same manner or sufficiently raise the same arguments during the postverdict colloquy. After the jury rendered its verdict, the district court observed that the jury had made its findings regarding Meyer's claim for unfair and deceptive trade practices and invited argument from the parties as to whether those findings were sufficient as a matter of law to establish that Belk had engaged in unfair and deceptive trade practices under North Carolina law. The court then heard argument on that specific issue.

Belk's counsel, at the request of the court, spoke up,

> Well, Your Honor, *we're going to file a motion to set aside the verdict on several grounds.*
>
> Frankly, we were very disappointed with the jury instructions. With all due respect, they totally ignored the patterned jury instructions that were submitted both by Meyer and Belk. And while there were—some of the instructions fairly accurately identified the issues, there were others that just made no sense when you deal with the fact that the Supreme Court has addressed this issue three times in the last 10 or 11 years . . . .
>
> *And so we're going to give the court an opportunity to set aside the verdict on the simple grounds that functionality does not meet the test that was described in the jury instructions.*
>
> But going to the issue of—and *we can do that whenever the court, you know, sees fit.* If you want to enter a briefing schedule, whenever.

J.A. 2399-2400 (emphases added). Counsel argued that Meyer's complaint failed to properly plead the claim for unfair and deceptive trade practices; Belk was "taken aback" by the verdict form submitted to the jury; and the jury was not properly instructed. J.A. 2399-2406. Counsel for Belk also argued that awarding Meyer treble damages under North Carolina law for "innocent" infringement of an unregistered trademark would be "grossly out of proportion to [the penalty] under either federal or state law for registered trademarks." J.A. 2408.

Counsel only addressed the sufficiency of the evidence in two very limited respects. First, counsel conclusorily argued that the evidence was insufficient to support the jury's factual finding that Belk purchased a cookware design from a third party that was deceptively similar to the Anolon Advanced line, even after learning that proposed designs provided by the third party were being sold by Meyer. *See* J.A. 2407 ("So at least as far as issue number 3 is concerned, there is no evidence in the record to support that decision."). Second, as part of his argument that an award of treble damages would be unwarranted, counsel argued that he "didn't think there [wa]s any" evidence of Belk's intent to infringe Meyer's trade dress. J.A. 2408. Counsel failed to request any of the three forms of relief a court is permitted to grant under Rule 50(b), however.

After hearing argument from counsel for Meyer, the district court found as a matter of law that, based on the jury's factual findings, Belk's conduct constituted unfair and deceptive trade practices under North Carolina law and ordered damages to be trebled. The court then requested counsel for Meyer to prepare the final judgment. Finally, the court invited postverdict motions: "[T]hen, counsel, whatever motions counsel deem appropriate at this point, when the court receives the motions, then we'll proceed and be in touch with you." J.A. 2411. Thereafter, Belk failed to file a postverdict motion pursuant to either Rule 50(b) or Rule 59.

The postverdict oral argument does not remotely amount to substantial compliance with Rule 50(b) to preserve the sufficiency of the evidence challenge for our review. First, the context in which the postverdict arguments were made—during a discussion of whether the jury's factual findings constituted unfair and deceptive trade practices as a matter of law—suggests that neither the court nor the parties believed the sufficiency of the evidence challenges to have been the focus of the colloquy. Indeed, counsel himself indicated that he was "going to" file a motion to set aside the verdict "on several grounds." J.A. 2399. And, perhaps most importantly, the court indicated that it did not understand the arguments to be an oral Rule 50(b) motion, directing the parties, at the conclusion of the argument, to submit whatever motions they believed appropriate.

Second, the arguments advanced by counsel, in substance, did not sufficiently renew the earlier arguments made pursuant to Rule 50(a). Counsel summarily concluded that the evidence was insufficient without adequately pointing to the law and facts or specifying the judgment sought. Counsel failed to even summarily state that he was renewing the preverdict motion for judgment as a matter of law, as he did when he moved at the close of all the evidence.[10]

We briefly address one additional matter. At oral argument, counsel for Belk suggested that the indication from the presiding judge that he did not want to hear any additional argument on the sufficiency of the evidence should excuse Belk's failure to submit a Rule 50(b) motion. *See* Fourth Circuit Oral Argument, at 14:01 (Jan. 25, 2012) (counsel stated, "[The

---

[10]For the same reason, we reject Belk's contention that this colloquy was sufficient under Rule 50(b) because the court's "conclusion as a matter of law had the effect of confirming the jury's verdict on the predicate trade dress issue, as was explicitly acknowledged by both the Court and Meyer's counsel." Belk's Response to MTD 14. In other words, the district court was not called upon to rule on the sufficiency of the evidence on either claim.

judge] had made up his mind; he wanted to resolve the whole case right then" and "he didn't want to hear any further argument"). We flatly reject this argument.

A lawyer has a duty to preserve issues on the record for his client. Rule 50(b) inherently accommodates such potential deterrents to filing, providing counsel with a period of time in which, detached from the pressures of trial, to reflect and to carefully consider whether to file a motion for judgment as a matter of law without obtaining the judge's permission to file.

Therefore, Belk's failure to move pursuant to Rule 50(b) forfeits the sufficiency of the evidence challenge on appeal.

### III.

We next address the relationship between Rule 50(b), *Unitherm*, and purely legal challenges, such as the evidentiary challenges, the UDTPA challenges and the damages challenges presented here. We briefly touched on this issue before, *see Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009), but we take the opportunity here to undertake a more extensive inquiry.

To be sure, *Unitherm* bars sufficiency of the evidence challenges on appeal where a party has failed to move pursuant to Rule 50(b). *Unitherm* does not bar properly preserved claims of error that do not challenge the sufficiency of the evidence.[11] Indeed, we have recognized this limit to *Unitherm*'s

---

[11] 9B Wright & Miller, *Federal Practice and Procedure: Civil* § 2540 (3d ed. 2008) ("A renewed motion for judgment as a matter of law under Rule 50(b) is not a condition precedent to appeal from a final judgment. If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial, although it is always better practice for the parties to give the trial court

reach. *See, e.g.*, *Van Alstyne*, 560 F.3d at 203 n.3 (concluding that *Unitherm* did not bar challenge that district court erred in permitting jury to award statutory and punitive damages and attorney's fees and costs without first requiring party to prove actual damages under Stored Communications Act); *see also United States v. Mountain State Fabricating Co.*, 282 F.2d 263, 265 (4th Cir. 1960) (holding that failure to file motions for directed verdict, for new trial, or for judgment notwithstanding the verdict did not prevent review of alleged errors "in excluding, over objection, certain evidence and in denying certain requested instructions to the jury").

This limit is clear in light of the purpose of Rule 50, namely, to preserve a trial judge's power to determine questions of law, i.e., the legal question whether the evidence adduced at trial is sufficient to establish a claim as a matter of law, while allowing the jury to determine questions of fact. *See* 9B Wright & Miller, *Federal Practice and Procedure: Civil* § 2521 ("Federal Rule 50 is one of the judicial control devices provided by the Federal Rules of Civil Procedure so that the district court may enforce rules of law."); *see also Unitherm*, 546 U.S. at 401 ("A postverdict motion is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'"). Pursuant to Rule 50(a), the court will not submit an issue to the jury unless sufficient evidence exists to justify, as a legal matter, a finding in favor of the proponent. In other words, if the judge con-

---

an opportunity to correct its errors in the first instance."); *see, e.g.*, *Carlson v. Bukovic*, 621 F.3d 610, 618 n.13 (7th Cir. 2010) (citing *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 940 (7th Cir. 2006); *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 720 (7th Cir. 2003)) (noting that party's "purely legal issues" raised on appeal were properly preserved despite failure to file Rule 50 motion at trial because argument is not "related solely to the sufficiency of the evidence"), *cert. denied*, 131 S. Ct. 1609 (2011).

cludes that the plaintiff's case is, as a matter of law, so weak that no rational jury could find in favor of the plaintiff, the judge has the authority to enter judgment in favor of the defendant. The judge retains this power after the jury returns a verdict under Rule 50(b).

Rule 50 is meant to preserve the judge's power to determine evidentiary sufficiency. The rule is not concerned with "pure" questions of law that are detached from the evidence, not within the domain of the jury, and only ever properly ruled upon by the judge. Each of Belk's remaining challenges—the evidentiary challenges, the UDTPA challenges and the damages challenges—are such purely legal issues that survive unaffected by the reasoning or holding of *Unitherm* and, as long as they are properly preserved, may be considered on appeal. We explore each in turn.

## A.

We reject both of Belk's evidentiary challenges, namely that Meyer's expert, Nicholas Didow, was not properly qualified under Federal Rule of Evidence 702 and that his testimony and survey were unreliable. These issues are preserved for our review; Belk moved *in limine* before trial and objected at trial on the specific grounds raised here. *See* Fed. R. Evid. 103(a), (b).[12]

---

[12]We clarify that this issue is preserved only to the extent it is an independent legal challenge separate from the sufficiency of the evidence challenge. Belk advances the evidentiary challenges in the portion of its opening brief challenging the sufficiency of the evidence to support its contention that the trade dress had not acquired secondary meaning. At least one of the reasons Belk brings this challenge is to bolster its sufficiency of the evidence challenge. *See* Appellant's Br. 12-13 (stating in the statement of facts section, "Having no competent evidence that its trade dress could possibly have acquired distinctiveness among cookware purchasers, Meyer attempted to manufacture some"); *id.* at 31 (stating in the argument section, "In an effort to show that the Meyer ANOLON® cookware had acquired distinctiveness as required by [*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000)], Meyer hired an 'expert,' and commissioned a survey").

We review the district court's decision "to admit or exclude evidence for an abuse of discretion." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The district court "abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (citation omitted). "[E]ven if a district court applies the correct legal principles to adequately supported facts, the discretion of the trial court is not boundless and subject to automatic affirmance." *Id.* We review the record and district court's reasons and reverse if we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (internal quotation marks omitted).

First, we reject Belk's argument that Didow was unqualified as an expert in design and conduct of consumer survey research, particularly in trade dress or trademark surveys. Belk takes issue, in particular, with the fact that "this was the first court case for which [Didow] had designed original research, consumer survey research in [his] career" and that he did not "have an understanding of basic concepts of trade dress." J.A. 2149-50; *see also* Appellant's Br. 33-34 (arguing that although he had "[g]eneralized marketing expertise," "he had no experience whatever in trade dress or trademark surveys, had never designed a survey of any kind for litigation, and had never even laid eyes on a survey questionnaire that had actually been introduced in court").

Certainly, an expert must have specialized knowledge to assist jurors in deciding particular issues in the case, but Belk reads this requirement far too narrowly. In undertaking its role as gatekeeper to ensure that proffered evidence is reliable pursuant to Fed. R. Evid. 702, the district court must decide whether the expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). The district court should, as it clearly did here, "consider the proposed expert's full range of experience and training," not

just his professional qualifications. *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009); *Richmond Med. Ctr. for Women v. Herring*, 527 F.3d 128, 134 n.1 (4th Cir. 2008) ("[A] proffered expert's professional qualifications are insufficient to support his testimony; he must also have 'sufficient specialized knowledge to assist the jurors in deciding *the particular issues in the case.*' *Kumho Tire Co.*, 526 U.S. at 156, 119 S. Ct. 1167 (emphasis added) (internal quotation marks omitted)."), *rev'd en banc*, 570 F.3d 165 (2009).

We reject Belk's contention in full.[13] Based on his education, teaching, research and consulting activities, Didow was properly qualified as an expert in "marketing, consumer behavior, and evaluative studies." J.A. 2154. Indeed, he testified that he had been qualified as an expert witness in consumer behavior and marketing "in perhaps 20 law cases over [his] career." J.A. 2144. He also testified that he and others consider the creation, design and evaluation of consumer surveys to be a general subset of marketing and consumer behavior. Moreover, he testified that many of his consulting projects dealt with "designing, conducting, analyzing, and interpreting consumer research" in a variety of settings, J.A. 2143, and that he had "designed, conducted, analyzed, and interpreted probably 80 to 100 consumer research studies in various contexts," J.A. 2145.

Contrary to Belk's assertions, the fact that Didow had not previously conducted, specifically, trade dress or trademark surveys does not mean he was not properly qualified as an expert in this case. Belk provides no support for its argument that consumer survey research in trade dress litigation is *sui*

---

[13]We are not persuaded otherwise by *Richmond Medical Center for Women v. Herring*, in which we concluded that the district court did not abuse its discretion in excluding certain testimony of an expert who had credentials and experience as an obstetrician/gynecologist and perinatologist but no specialized experience or knowledge about the appropriate procedures for dislodging a fetal skull during a dilation and evacuation abortion. 527 F.3d at 134 n.1.

*generis* such that an expert's lack of experience in designing these specific surveys necessarily disqualifies him from giving an expert opinion. Furthermore, it appears that Didow had some understanding of trade dress and infringement issues, and Belk's concerns were instead appropriately addressed during cross-examination.[14] During voir dire by counsel for Belk, Didow testified that, while this was his first trade dress infringement case, he had some understanding of trade dress and infringement issues. To prepare himself, he testified that he consulted a number of sources, including "internet access to academic and professional sources" and "attorneys and legal practices who practice trade dress/trademark law." J.A. 2152-53. We do not hold against him, as Belk apparently would have us do, his failure to access any survey questionnaires that had been offered and accepted in court in trade dress litigation. In sum, having reviewed the record, we are confident that the district court did not abuse its discretion in qualifying Didow as an expert.

Second, to the extent it presents a distinct assignment of error on appeal, we reject Belk's argument that the district court erred in admitting Didow's testimony and survey. Belk's second argument attacks only the "technical deficiencies" of the survey conducted by Didow to investigate whether the trade dress had acquired secondary meaning and the likelihood of confusion. Belk's laundry list of alleged technical deficiencies includes exclusion of relevant consum-

---

[14]Indeed, the district court highlighted the importance of cross-examination: "And what I hear you asking him is certainly relevant cross examination that goes to whether or not the jury finds his testimony to be credible and the weight they may give his testimony." J.A. 2154. We have recognized the importance of cross-examination of expert witnesses: "[T]he court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Westberry*, 178 F.3d at 261 (citation omitted).

ers, inadequate sample size, geographic representativeness, leading questions and side-by-side exposure.

As we have recently opined, "[w]hile there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011) (internal quotation marks omitted). We are confident that this is not one of those rare occasions; these methodological objections "are properly addressed by the trier of fact." *Id.* (rejecting argument that district court abused its discretion in Lanham Act case by admitting expert testimony and survey where the experts allegedly had "surveyed the wrong universe of respondents"); 6 McCarthy, *Trademarks and Unfair Competition* § 32:170 (4th ed. 2012) ("The majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence.").

In sum, we hold that the district court did not abuse its discretion in finding that Didow was qualified as an expert or in admitting his testimony and survey.

## B.

We next consider Belk's UDTPA and damages challenges, which also are not barred by *Unitherm*. We consider and reject each challenge in turn and hold that the district court properly trebled damages, as measured by Belk's profits, and entered judgment in the amount of $1,260,000 pursuant to N.C. Gen. Stat. § 75-16.[15] In so holding, we find that, based

---

[15]To be sure, the judgment order entered by the district court recites, ambiguously, that "Meyer have and recover from [Belk] damages in the amount of $420,000, and that that [sic] the damages amount be trebled to $1,260,000 pursuant to N.C. Gen. Stat. § 75-16 (1985)." J.A. 3017. In context, however, despite its somewhat inartful phrasing, it is clear, and the parties fully understand, that the sole "judgment" against Belk is for $1,260,000.

on the jury's factual findings, Belk engaged in unfair and deceptive trade practices as a matter of law; N.C. Gen. Stat. §§ 75-1.1 and 75-16 apply here; and profits are a "rough measure" of damages subject to trebling pursuant to N.C. Gen. Stat. § 75-16, *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987). We decline to address whether the district court erred by failing to consider equitable factors under 15 U.S.C. § 1117(a) because Belk was entitled to such an award under N.C. Gen. Stat. § 75-16.

### 1.

We review de novo the legal conclusions upon which the district court's denial of judgment as a matter of law were premised. *See Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 231 (4th Cir. 2007). We likewise review de novo the district court's legal determinations with respect to the UDTPA claim. *ABT Bldg. Prods. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 113 (4th Cir. 2006); *S. Atlantic Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 534-35 (4th Cir. 2002). "We review a jury's factual findings on a UDTPA claim 'in the light most favorable to the prevailing party, and [i]f, with that evidence, a reasonable jury could return a verdict in favor of plaintiffs, [we] must defer to the judgment of the jury, even if [our] judgment on the evidence differs.'" *ABT Bldg. Prods.*, 472 F.3d at 113 (internal quotation marks omitted).

### 2.

To recover under the UDTPA, a party must show that (1) "the defendant engaged in conduct that was in or affecting commerce," (2) "the conduct was unfair or had the capacity or tendency to deceive," and (3) "the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Id.* at 122 (internal quotation marks omitted). "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but

whether the conduct was unfair or deceptive is a legal issue for the court." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 902 (4th Cir. 1996).

"[U]nder North Carolina law, the conduct sufficient to constitute an unfair or deceptive trade practice is a somewhat nebulous concept, and depends on the circumstances of the particular case," but only practices involving "some type of egregious or aggravating circumstances are sufficient to violate the UDTPA." *ABT Bldg. Prods.*, 472 F.3d at 122-23 (brackets and internal quotation marks omitted). "Generally, a trade practice will only be deemed *unfair* when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 123 (emphasis added) (internal quotation marks omitted). "Acts are *deceptive* when they 'possess[] the tendency or capacity to mislead, or create[] the likelihood of deception.'" *Gilbane Bldg. Co.*, 80 F.3d at 901-02 (emphasis added). "Either unfairness or deception can bring conduct within the purview of the statute; an act need not be both unfair and deceptive." *Id.* Furthermore, "the intent of the actor" and good faith are irrelevant.[16] *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981).

To recover damages, a plaintiff must prove he "suffered actual injury as a proximate result of defendant['s] conduct." *Walker v. Branch Banking & Trust Co.*, 515 S.E.2d 727, 730 (N.C. Ct. App. 1999); *Coley v. Champion Home Builders Co.*, 590 S.E.2d 20, 22 (N.C. Ct. App. 2004) (same). "Actual injury may include the loss of the use of specific and unique property, the loss of any appreciated value of the property, and such other elements of damages as may be shown by the evidence." *Coley*, 590 S.E.2d at 22.

---

[16]Belk does not dispute this general proposition. *See* Appellant's Br. 50 ("Under Chapter 75, intentional wrongdoing and bad faith are not required for trebling.").

"Treble damages are assessed automatically upon a violation of N.C. Gen. Stat. § 75-1.1" pursuant to N.C. Gen. Stat. § 75-16. *Walker*, 515 S.E.2d at 731; *Marshall*, 276 S.E.2d at 402 (award of treble damages is not subject to judicial discretion). Section 75-16 only refers to "any person" being "injured" and does not provide the appropriate method of measuring damages. The North Carolina courts have explained that "[t]he measure of damages used should further the purpose of awarding damages, which is 'to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.'" *Bernard v. Cent. Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 585 (N.C. Ct. App. 1984) (quoting *Phillips v. Chesson*, 58 S.E.2d 343, 347 (N.C. 1950)).

In *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987), we held that an award of profits disgorged from the defendants could be trebled pursuant to N.C. Gen. Stat. § 75-16. In that case, plaintiff pursued four causes of action: trademark infringement, 15 U.S.C. § 1114(1); false designation and representation of origin, *id.* § 1125(a); common law trademark infringement and unfair competition; and unfair trade practices, N.C. Gen. Stat. § 75-1.1. 816 F.2d at 147. The district court awarded summary judgment to the plaintiff on the question of liability on all four causes of action and, after a bench trial, determined plaintiff's damages to be defendants' profits from the alleged infringement and trebled this amount pursuant to N.C. Gen. Stat. § 75-16. *Id.* at 147-48. On defendants' challenge to the award of damages—pursuant to 15 U.S.C. § 1111 plaintiff did not give notice of the registration or the infringer had no actual knowledge of it—we held that we need not consider whether plaintiff was entitled to an award of damages under the Lanham Act, "for it clearly was entitled to such an award upon its common law claim of unfair competition and its claim under North Carolina's Unfair Trade Practices Act." *Id.* at 149. We held that "[t]he defendants' profits . . . are a rough measure of the plaintiff's

damages. Indeed, they are probably the best possible measure of damages available." *Id.*

### 3.

### a.

We now turn to Belk's contentions.[17] Belk's first contention—that the trial court erred in tendering unfair competition issues to the jury that are not as a matter of law unfair and deceptive trade practices under state law—fails. Fatal to its contention, Belk cherry-picks language as to what constitutes a violation of the statute. A practice must be unfair *or* deceptive, not both. Belk, however, quotes case law only interpreting unfairness. *See* Appellant's Br. 56 (quoting *ABT Building Products Corp. v. National Union Fire Insurance Co. of Pittsburgh*, which quoted *Marshall v. Miller* only for what constitutes "unfairness," when *Marshall* also discussed what constitutes "deception").[18]

---

[17]We assume, but need not decide, these contentions are preserved for our review despite the failure to move postverdict under Rule 50(b) or raise these issues in a motion for summary judgment. Belk argued the first issue during the postverdict colloquy with the judge and raised the second and third issues during its oral Rule 50(a) motion. Because these issues are purely legal and detached from the evidence, we do not believe the failure to move postverdict for judgment as a matter of law fatally affects the ability to raise these issues on appeal; the parties presented these purely legal issues to the district court, giving it the first opportunity to rule on the merits.

[18]Belk writes in its brief:

This Court has recognized that:

[O]nly practices that involve '[s]ome type of egregious or aggravating circumstances' are sufficient to violate the U[D]TPA." [internal citations omitted] Generally, a trade practice will only be deemed "unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 403 (1981).

Appellant's Br. 56 (quoting *ABT Bldg. Prods.*, 472 F.3d at 123).

Furthermore, based on the jury's factual findings, Belk engaged in unfair and deceptive trade practices as a matter of law. The jury found that Belk distributed, marketed and sold a private-label cookware line that was "deceptively similar" to the Anolon Advanced line; Belk did so after receiving product, sales and market information, as well as images and samples of the Anolon Advanced line; and Belk purchased a cookware design from a third party that was "deceptively similar" to the Anolon Advanced line, even after learning that proposed designs sold by the third party were being sold by Meyer. This conduct falls within the category of conduct that North Carolina courts have held possesses the tendency or capacity to mislead or creates the likelihood of deception. *See, e.g., Harrington Mfg. Co. v. Powell Mfg. Co.*, 248 S.E.2d 739, 746 (N.C. Ct. App. 1978) (internal quotation marks omitted) (explaining that allegations that one has "pass[ed] off . . . one's goods as those of a competitor" and that competitor took one's product and demonstrated it as his own, which both "involve the misappropriation of benefits which flow from the quality of a competitor's product," are sufficient allegations of unfair competition to withstand a motion to dismiss).

### b.

We also reject Belk's second contention, that the North Carolina legislature did not intend for N.C. Gen. Stat. §§ 75-1.1 and 75-16 to cover "unintentional" unregistered trademark infringement claims already addressed by the Lanham Act.

Belk relies heavily on *Sideshow, Inc. v. Mammoth Records, Inc.*, 751 F. Supp. 78 (E.D.N.C. 1990), in which the plaintiff asserted infringement of an unregistered trademark under the Lanham Act, 15 U.S.C. § 1125(a), as well as unfair competition claims under N.C. Gen. Stat. §§ 75-1.1 and 75-16 and the common law, based on the defendants' use of the name "Side-winder." Defendants moved for judgment on the pleadings, seeking dismissal of plaintiff's state law unfair competition

count because cases involving innocent infringement of an unregistered trademark and the facts of that case did not fall within the scope of §§ 75-1.1 and 75-16. The district court ruled that N.C. Gen. Stat. §§ 75-1.1 and 75-16 "were not intended by the North Carolina legislature to apply to cases involving innocent and unintentional infringement of unregistered trademarks" and granted the motion. 751 F. Supp. at 80.

The district court in *Sideshow* reasoned that the plaintiff was not an injured consumer and a "pervasive federal scheme in regulating trademarks" provided adequate remedies, along with remedies under North Carolina common law. *Id.* at 80-81 (citing *Skinner v. E.F. Hutton & Co.*, 333 S.E.2d 236 (N.C. 1985), in which the Supreme Court of North Carolina held that securities transactions do not fall within the scope of N.C. Gen. Stat. § 75-1.1 for similar reasons).[19] In addition, the *Sideshow* court explained that interpreting the statute otherwise would "produce an absurd result."[20] *Id.* at 81 (citing N.C. Gen. Stat. §§ 80-11, -12).

Although the care taken by the district court in *Sideshow* is quite evident, we nonetheless find *Sideshow* unpersuasive.

---

[19]*See also Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 167 (4th Cir. 1985) (securities transactions do not fall within the statute's scope); *Bache Halsey Stuart, Inc. v. Hunsucker*, 248 S.E.2d 567, 570 (N.C. Ct. App. 1978) (commodities transactions do not fall within the statute's scope); *Buie v. Daniel Int'l Corp.*, 289 S.E.2d 118 (N.C. Ct. App. 1982) (employer-employee relationships do not fall within the statute's scope).

[20]The *Sideshow* court explained that N.C. Gen. Stat. § 80-11, which creates a cause of action for infringement of registered marks, provided as a "general measure" of damages "profits or damages," and that § 80-12 provided for a penalty as well "of not less than two hundred dollars ($200.00) and not more than one thousand dollars ($1,000)." 751 F. Supp. at 81 (internal quotation marks omitted). Interpreting the state statute, the court believed the legislature would not have intended "mandatory treble damages for an innocent infringement of an unregistered mark, while only intending a $200 to $1,000 penalty for deliberate and intentional infringement of a registered mark." *Id.*

First, we explained in *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001), authority of which the *Sideshow* court did not have the benefit, the relationship between intent and § 75-1.1 in an infringement action. In *Lyons*, plaintiff brought suit, alleging copyright and trademark infringement and a North Carolina unfair competition claim.[21] 243 F.3d at 795-96. After a bench trial, the district court entered judgment for the defendants on the state law claim "because the 'infringing activities were not undertaken with the intent that the public would be deceived as to the true origin of the costumes.'" *Id.* at 796. We rejected the argument that "federal trademark and copyright infringement amount to *per se* violations of the [UDTPA]." *Id.* at 804-05. We vacated the district court's judgment and remanded for further proceedings, however, because a finding that "the infringing activities were not taken with the intent that the public would be deceived as to the true origin of the costumes[] . . . alone does not appear to immunize the defendants from the UDTPA claim." *Id.* at 805 (footnote omitted). We cited North Carolina case law for the proposition that the actor's intent is irrelevant to the § 75-1.1 determination. *Id.*

Moreover, the North Carolina legislature has since amended N.C. Gen. Stat. § 80-12, making a violation of state-registered trademark law a per se violation of § 75-1.1, and

---

[21]Indeed, claims under 15 U.S.C. § 1125(a) are regularly asserted together with claimed violations of state unfair and deceptive trade practices statutes. *See* Marcia B. Paul, Basic Principles of Section 43(a) and Unfair Competition, in *Litigating Copyright, Trademark and Unfair Competition Cases*, 81, 98-99 (Practicing Law Institute 1995), *available at* 419 PLI/PAT 81 (Westlaw); *see, e.g.*, *Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc.*, No. 10-10742-DJC, 2011 WL 6812642 (D. Mass. Dec. 28, 2011) (granting summary judgment in favor of defendant on state unfair competition claim because plaintiff failed to show that mark was entitled to trademark protection and that defendant infringed the protected mark); *Contemporary Rest. Concepts, Ltd. v. Las Tapas-Jacksonville, Inc.*, 753 F. Supp. 1560 (M.D. Fla. 1991) (common law service mark and trademark infringement constitute unfair and deceptive business practices under Florida statute).

thus subject to treble damages. 1995 N.C. Sess. Laws, ch. 436 § 2; *see Lyons*, 243 F.3d at 805. While the language providing for "profits or damages" and "penalty" still appears in § 80-11, N.C. Gen. Stat. § 80-11, § 80-12 now provides that a violation of § 80-11 "constitutes a violation of [§] 75-1.1," *id.* § 80-12. No longer does the civil remedies provision distinguish between profits, damages and penalty.

Furthermore, although there was no specific finding here of an intent to deceive (an instructional error that is not preserved, *see supra* n.6), the evidence does not support Belk's argument that the infringement was "innocent" or "unintentional," in light of the trial evidence as a whole. The jury's findings bear repeating. The jury found that Belk distributed, marketed and sold a private-label cookware line that was deceptively similar to Meyer's Anolon Advanced line; that Belk did so after receiving product, sales and market information, as well as images and samples of the Anolon Advanced line; and that Belk purchased a cookware design from a third party that was deceptively similar to the design of the Anolon Advanced line, even after learning that proposed designs provided by the third party were being sold by Meyer. Despite the lack of a specific finding, the inference of an intent to deceive could hardly be stronger on this record.

c.

Finally, we reject Belk's contention that the district court erred in its award of damages. The judge properly treated the award of profits as damages subject to trebling under N.C. Gen. Stat. § 75-16.

As an initial matter, we reject Belk's contention that the trial court erred in treating the award of profits earned by Belk as damages subject to trebling under N.C. Gen. Stat. § 75-16 in the absence of any pleading of actual damage to Meyer. In its answer to Belk's amended complaint and amended counterclaims, Meyer alleged that Belk's unfair competition in

violation of North Carolina law "will continue to cause significant damage to Meyer" and "have caused and threatened to cause, great and irreparable harm to Meyer." J.A. 426. In addition, Meyer requested damages, both Belk's profits arising from the misappropriation pursuant to § 1117 and "such other and further relief as the Court deems just and proper." J.A. 427. We find these to be sufficient allegations of injury and actual damage.

Moreover, Belk's profits on the disputed cookware, which the district court treated as actual damages, properly constitute a "rough measure of the plaintiff's damages" subject to trebling under N.C. Gen. Stat. § 75-16. *Polo Fashions, Inc.*, 816 F.2d at 149.[22] While not perfect, as we explained in *Polo Fashions*, we believe this measure of damages, as the North Carolina courts have explained, furthers the purpose of awarding damages, which is "to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." *Bernard*, 314 S.E.2d at 585 (internal quotation marks omitted). Thus, the district court was entitled to treble the award of profits.

## IV.

In sum, Meyer's motion to dismiss is denied. Nevertheless, because we discern no reversible error in respect to the issues raised by Belk that survive *Unitherm*, the judgment of the district court is

*AFFIRMED*.

---

[22]We reject Belk's argument that *Polo Fashions* is inapposite because it was a counterfeiting case. Belk does not offer a reason why this distinction mattered to the damages analysis in *Polo Fashions*.