The RADIANCE FOUNDATION,
INC. et al., Plaintiffs,

v.

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE, Defendant.

Civil Action No. 2:13cv53.

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed Dec. 11, 2013.

Charles Manley Allen, Jr., Esq., William Francis Demarest, III, Esq., for Plaintiff.

David Glenn Barger, Esq., Johnine Barnes, Esq., Steven John Wadyka, Jr., Esq., for Defendant.

### MEMORANDUM ORDER

RAYMOND A. JACKSON, District Judge.

Before the Court is Defendant National Association for the Advancement of Colored People's ("Defendant") Motion *in Limine* to Exclude Expert Report and Testimony of Tracy Tuten, Ph.D. (ECF No. 48) in the above-styled matter. Having carefully reviewed the parties' pleadings, this matter is now ripe for judicial decision. For the reasons stated herein, Defendant's Motion to Exclude is **GRANTED IN PART and DENIED IN PART.**

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff The Radiance Foundation, Inc. is a non-profit organization founded by Plaintiff Ryan Bomberger that educates the public about social issues from a Christian perspective. Defendant National Association for the Advancement of Colored People provides educational and outreach services to African–Americans. After Defendant's Senior Vice President publicly criticized Plaintiffs' comparison of abortion to slavery as a part of their pro-life campaign, Bomberger wrote two news articles critiquing Defendant's stance on abortion under the headline "National Association for the Abortion of Colored People." These articles were posted on Plaintiffs' websites *toomanyaborted.com* and *theradiancefoundation.org* as well as a third-party website *lifenews.com.* Bomberger published a third article on *lifenews.com* that included a graphical depiction of Defendant's Scales of Justice seal. Bomberger has used the NAACP acronym throughout his news articles and public speeches to refer to Defendant since June 2011.

On January 28, 2013, Defendant sent Plaintiffs a letter threatening to take legal action if Plaintiffs did not cease to use its federally registered trademarks "NAACP" and "National Association for the Advancement of Colored People" and its protected "Scales of Justice" seal and "Image Awards" phrase. On February 1, 2013, Plaintiffs filed a Complaint for Declaratory Relief, asserting that their use of Defendant's marks does not constitute infringement and is protected speech under the First Amendment. Defendant filed counterclaims for trademark infringement and trademark dilution in violation of the Lanham Act and Virginia law. On November 6, 2013, Defendant filed the instant Motion *in Limine* to Exclude Expert Report and Testimony of Tracy Tuten, Ph.D.

### II. LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court's ("Supreme Court") established the standard for the

admissibility of expert testimony pursuant to Federal Rule of Evidence 702. Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702; *see also United States v. Wilson,* 484 F.3d 267, 274–75 (4th Cir. 2007). The *Daubert* decision rejected the prior rigid "general acceptance" test of *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), and established a new two-part test for the admissibility of expert testimony. *See Daubert,* 509 U.S. at 589, 592–93, 113 S.Ct. 2786. Under *Daubert,* when a court is "[f]aced with a proffer of expert scientific testimony," the court "must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592, 113 S.Ct. 2786; *see also United States v. Moreland,* 437 F.3d 424, 431 (4th Cir.2006). In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court held that the *Daubert* test applies to all expert testimony falling under Rule 702.

 "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786. In determining whether the an expert possesses scientific knowledge so that the testimony is rele-

vant and reliable, a court may consider five factors: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *United States v. Crisp,* 324 F.3d 261, 266 (4th Cir.2003) (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786). An additional factor to consider is whether the expert testimony was prepared solely for purposes of litigation, or whether it flowed naturally from the expert's research or technical work. *See Wehling v. Sandoz Pharms. Corp.,* 162 F.3d 1158 (4th Cir.1998) ("Another significant fact weighing against admitting the testimony is where, as here, the expert developed his opinions expressly for the purposes of testifying"); *Daubert v. Merrell Dow Pharms.,* 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*") ("If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles'"). "[T]he trial judge must have considerable leeway in determining whether particular expert testimony is reliable." *Kumho Tire Co.,* 526 U.S. at 152, 119 S.Ct. 1167; *see also Daubert,* 509 U.S. at 595, 113 S.Ct. 2786 (noting that the decision whether to admit or exclude expert testimony for not being reliable "must be solely on principles and methodology, not on the conclusions that they generate."); *U.S. v. Dorsey,* 45 F.3d 809, 814 (4th Cir.1995) ("a trial judge has a great deal of discretion in deciding whether to admit or exclude expert testimony."). The proponent of expert testimony has the burden of establishing admissibility by a preponderance of the evidence. *Cooper v.*

*Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir.2001).

■ "A district court's reliability determination does not exist in a vacuum, as there exist meaningful differences in how reliability must be examined with respect to expert testimony that is primarily experiential in nature as opposed to scientific." *Wilson*, 484 F.3d at 274. Unlike "[p]urely scientific testimony," which is "characterized by 'its falsifiability, or refutability, or testability,'" and is thus "'objectively verifiable,'" such "[e]xperiential expert testimony . . . does not 'rely on anything like a scientific method.'" *Id.* Although "'experience alone—or experience in conjunction with other knowledge, skill, training or education—may . . . provide a sufficient foundation for expert testimony,'" nevertheless, the district court "must require an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *Id.*

■ In evaluating a proffered expert's qualifications, "[t]he trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co.*, 526 U.S. at 156, 119 S.Ct. 1167. *Daubert* requires that the expert possess expertise assessed in the context of the "nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." *Id.* at 150, 119 S.Ct. 1167. One knowledgeable about a particular subject need not be precisely informed about all details of issues raised in order to offer an opinion as an expert. *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989). An imperfect fit between the expert's knowledge and experience and the issues before the court impacts the weight given to the expert's testimony, not its admissibility. *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1101 (10th Cir.1991). *See, e.g., Belk Inc. v. Meyer Corp.*, 679 F.3d 146, 162 (4th Cir.2012) (the requirement that an expert have specialized knowledge should not be read too narrowly). However, "[w]here a purported expert witness has neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered, that witness's testimony may be excluded." *SMD Software, Inc. v. EMove, Inc.*, 945 F.Supp.2d 628 (E.D.N.C.2013).

## III. DISCUSSION

Defendant seeks to exclude the testimony of Tracy Tuten, Ph.D. Defendant asserts that Dr. Tuten is unqualified and lacks knowledge of and familiarity with basic trademark concepts and litigation survey methodology. Defendant further argues that Dr. Tuten's opinions are not founded upon reliable scientific, technical, or otherwise specialized evidence as required under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Rule 702. Defendant's contention is based primarily on four assertions: 1) Dr. Tuten lacks any qualifications or experience to provide expert testimony or opinion regarding trademark litigation surveys, 2) Dr. Tuten lacks familiarity with basic concepts of trademark law and the methodology for designing and conducting consumer surveys for trademark litigation, 3) Dr. Tuten's report is inherently unreliable as it contains numerous inaccuracies and inconsistencies regarding the topics on which she purports to opine, and 4) Dr. Tuten lacks confidence in the opinions expressed in her reports. Defendant relies primarily on the Supreme Court's decision in *Daubert* to argue Dr. Tuten has no experience designing or conducting surveys for trademark litigation

and has not had any work in the area of trademark peer reviewed or published.

Plaintiffs counter by claiming that Dr. Tuten is a qualified expert in the design, execution and analysis of consumer surveys because she has researched and written about web-based consumer surveys. Plaintiff challenges Defendant's characterization of 'evidentiary rules by asserting that, under Rule 702 and *Daubert*, expert knowledge does not have to be acquired in the context of litigation to be qualifying expertise. Plaintiffs also challenge the contention that science pertaining to consumer studies generally is insufficient to make Dr. Tuten's expert opinion unreliable because her opinions are not based on extensive experience in the specific field of trademark. Plaintiff also points out that Dr. Tuten has provided expert witness services on four separate matters related to trademark litigation in addition to her vast experience in consumer studies, surveys and marketing in other legal and social science areas.

■ After reviewing her deposition testimony and vocational evaluation of Dr. Henry Ostberg, Ph.D.'s survey, the Court concludes that Dr. Tuten's testimony regarding trademark law, the dilution of a trademark and likelihood of consumer confusion resulting from infringing or tarnishing use of a mark is inadmissible because she does not possess sufficient specialized knowledge related to the core issues pertaining to dilution and confusion. Dr. Tuten does not have the requisite scientific knowledge because her general expertise in the area of surveys and marketing is not sufficiently specialized to assist in deciding the particular issues of the case. Dr. Tuten is unfamiliar with basic trademark law concepts, commonly used trademark litigation survey methods and interpretation of statistical tables to measure dilution and confusion. The Court finds that Dr. Tuten

is qualified as a general consumer survey methodologist; therefore, the scope of Dr. Tuten's testimony is limited to opinions regarding the design, execution and analysis of Dr. Ostberg's evidence based on her general knowledge of consumer survey principles and methodologies.

As for the first prong of the *Daubert* test, Dr. Tuten does not possess scientific knowledge related to the particular subject matter upon which she offers opinions for her testimony and report to be considered reliable. Dr. Tuten has extensive experience researching consumer trends and some degree of experience in trademark litigation. She previously tested consumer studies techniques and her survey work has been published, reviewed and used as evidence in other court cases. However, Dr. Tuten opines upon Dr. Ostberg's trademark dilution and confusion survey, and Plaintiffs have not demonstrated that she understands the intricacies of surveys prepared for trademark litigation or surveys testing the particular issues of dilution and likelihood of consumer confusion. Dr. Tuten's opinions relate more generally to surveying, an area in which she possesses experiential expertise. However, to the extent that she attempts to proffer opinions about trademark dilution or likelihood of confusion, these opinions are unreliable.

As for the second prong of the *Daubert* test, because her testimony is unreliable, Dr. Tuten's report and testimony will not assist this Court as the trier of fact in determining the reliability of Dr. Ostberg's survey. Plaintiffs have not established that Dr. Tuten applied her knowledge of consumer surveys reliably to the facts of the case. As *Daubert* explains, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786. The principles and methodology Dr. Tuten used are not particular-

ized for trademark litigation, do not relate to the issues Dr. Ostberg sought to test in his survey, and do not discuss the background facts of the case. She states in her report that her conclusions were based on her own experience with survey methodology and only one reference guide on survey research. Dr. Tuten did not state that she used any sources related to trademark infringement, dilution or consumer confusion. Dr. Tuten's assessment and evaluation against the relevant scientific evidence will not be helpful to this Court as the fact finder in identifying certain fallacies in Dr. Ostberg's survey because it is not clear that her assessments are not "outside the range where experts might reasonably differ." *Kumho Tire Co., Ltd.*, 526 U.S. at 153, 119 S.Ct. 1167.

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that an expert was properly qualified to testify as an expert in marketing, consumer behavior and evaluative studies at a trial on trade dress infringement and unfair trade practices claims, even though the expert had not previously conducted trade dress or trademark surveys. *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146 (4th Cir.2012) (expert testified that he had been qualified as expert witness in consumer behavior and marketing "in perhaps 20 law cases over [his] career," he also testified that he and others considered creation, design, and evaluation of consumer surveys to be general subset of marketing and consumer behavior, he testified that many of his consulting projects dealt with "designing, conducting, analyzing, and interpreting consumer research" in a variety of settings, and that he had "designed, conducted, analyzed, and interpreted probably 80 to 100 consumer research studies in various contexts."). In its analysis, the Fourth Circuit noted "the district court must decide whether the expert has sufficient specialized knowledge to assist the

jurors in deciding *the particular issues in the case* ... [and should] consider the proposed expert's full range of experience and training, not just his professional qualifications." *Id.* at 162. The Fourth Circuit further commented that the expert had some understanding of the specific issues raised in the case, and that any attack on the sufficiency of that knowledge was more appropriately left to cross-examination. *Id.* at 162–63.

The Fourth Circuit noted in *Belk, Inc.* that consumer survey research in trademark dilution litigation is not *sui generis*, requiring experience designing specific types of surveys. However, Plaintiffs have not proven that Dr. Tuten's general knowledge of consumer surveys is specialized enough that she has knowledge of the particular issues in the case, which *Belk, Inc.* requires. The expert in *Belk, Inc.* demonstrated that he understood trade dress and infringement issues. Dr. Tuten has not. In her deposition, she misunderstood the concepts of trademark dilution and consumer confusion. Also, the expert in *Belk, Inc.* consulted academic and professional internet sources as well as attorneys who practice trademark law before offering expert opinions. Dr. Tuten has not. By Dr. Tuten's own admission under oath, she is unfamiliar with trademark law and specific consumer surveys used to test dilution and confusion in intellectual property litigation. She admits to having Googled issues after her report was filed and before her deposition. Dr. Tuten's shortcomings also include her unfamiliarity with the NAACP, her lack of knowledge about conventional trademark surveys and her unawareness of the law applicable to the counterclaims. Using the criterion as explained in *Belk, Inc.*, a precedent similar to the facts at hand, the Court finds that Dr. Tuten's education, teaching, research and consulting activities do not properly qualify her as

an expert in trademark consumer surveys and studies. She is not a proper fit to testify about trademark dilution and likelihood of consumer confusion issues because her experiences do not qualify her as an expert possessing specialized knowledge of the particular issues in the case.

The fact that Dr. Tuten was unfamiliar with Defendant's organization, types of trademark litigation consumer surveys and trademark law at the time of her report and deposition provides the Court with sufficient evidence to determine that her conclusions regarding Defendant's survey evidence are not based on reliable principles and methods or sufficient facts and data. Based on the Court's analysis under *Daubert* and Rule 702, Dr. Tuten's opinions regarding trademark dilution and likelihood of consumer confusion are inadmissible. However, the Court finds that Dr. Tuten may testify to the principles and methodologies of consumer surveys without offering her opinion on the survey's relationship to trademark dilution and likelihood of confusion.

Plaintiffs have not established by a preponderance of the evidence that Dr. Tuten's general knowledge of researching and designing consumer surveys is sufficient to offer expert opinions on surveys created for trademark litigation to test consumer confusion and the dilution of a mark. Plaintiffs have established only that Dr. Tuten is a qualified consumer survey expert. Therefore, the Court **GRANTS** Defendant's motion to exclude Dr. Tuten's report and testimony to the extent that she opines upon issues related to trademark dilution and likelihood of consumer confusion. However, the Court **DENIES** Defendant's motion to exclude Dr. Tuten's testimony in its entirety. Accordingly, the scope of Dr. Tuten's testimony is limited to facts and opinions re-

garding general consumer survey principles and methodologies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* to Exclude Expert Report and Testimony of Tracy Tuten, Ph.D. is **GRANTED IN PART.** The Clerk is **DIRECTED** to provide a copy of this Memorandum Order to counsel for the parties.

**IT IS SO ORDERED.**