FLOYD, Circuit Judge,
dissenting in part:
I do not think that the district court maintained subject matter jurisdiction over this case once the October 14, 1993 dismissal order became final on January 1, 1994. I therefore would not reach the merits of ORL’s claim for $4 million based on Nelson’s confession of judgment and very respectfully dissent to Part II.A.1 of the majority’s opinion.
I.
This case requires nothing more than mechanical application of the Supreme Court’s decision in Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and any attempt to meaningfully distinguish it falters under a more exacting review. Although I recognize that the dismissal in Kokkonen was pursuant to a stipulation by the parties under Federal Rule of Civil Procedure 41(a)(1)(ii), the Supreme Court was clear that district courts’ authority in such a situation is no different than when dismissal is court-ordered pursuant to Rule 41(a)(2), as it was in this case. In summarizing its holding, the Court stated the following:
The short of the matter is this: .... When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), which specifies that the action “shall not be dismissed at the plaintiffs instance save upon order of the court and upon such terms and conditions as the court deems proper,” the parties’ compliance with the terms of the settlement contract (or the court’s “retention of jurisdiction” over the settlement contract) may, in the court’s discretion, be one of the terms set forth in the order. Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties’ stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract[ ] if the parties agree.
Id. at 381-82, 114 S.Ct. 1673 (emphasis added).
Thus, that “[i]n Kokkonen, the stipulation of dismissal was executed by the parties, filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), and was independently ‘so ordered’ by the district *226 court[,]” ante at 218, does not differentiate Kokkonen from this case for any pertinent purpose. The district court in this case maintained no greater authority than the district court in Kokkonen, and insofar as both district courts failed to exercise that authority, the result — a want of subject matter jurisdiction — should be the same.
The majority’s couching of the district court’s October 14, 1993 order as having “conditionally dismissed” the case, ante at 218 (emphasis deleted), results from picking language from that order and imputing into it meaning where there is none. Plainly and simply, the order dismissed the action — sans any “if — then” Boolean-like operators and sans any conditions precedent — and to characterize the district court’s “expectation that the settlement will be consummated” either as a reservation of subject matter jurisdiction or as a retention of the power to enforce the settlement agreement has zero basis in the law and runs smack into the Supreme Court’s central holding in Kokkonen and this Court’s cases applying the same. Kokkonen, 511 U.S. at 381, 114 S.Ct. 1673 (“The judge’s mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.”); see Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 283 (4th Cir.2002) (“Where a court merely recognizes the fact of the parties’ agreement and dismisses the case because there is no longer a dispute before it, the terms of the agreement are not made part of the order and consequently will not serve as a basis of jurisdiction. ... This rule is interpreted to require that the district court give a clear indication that it is incorporating the terms of the agreement into that order or retaining jurisdiction over the agreement.” (emphasis added) (paragraph break omitted)).
To be sure, though, the October 14, 1993 order did provide to RTC “the right to reopen” the lawsuit; but any reopening required some triggering action (e.g., the filing of a motion). Final dismissal, on the other hand, was to be the default disposition of the case on January 1, 1994, absent that triggering action (hence, the right to “reopen” the action and not the right to “effeetuate/finalize dismissal” if settlement is consummated). Thus, to the extent that dismissal was at all “conditional[ ],” it was so upon RTC not filing a motion to reopen, which, as explained below in Part II, it did not do. The district court therefore became divested of subject matter jurisdiction on January 1, 1994.
The majority contends that the December 23, 1993 Motion to Clarify was, in essence, a motion to reopen the case. Before addressing the Motion to Clarify on the merits, however, I note that the weakness in the majority’s “conditional dismissal” theory is highlighted by the very presence of a second basis as to why the district court retained subject matter jurisdiction. In other words, if the dismissal was truly conditional upon the parties consummating settlement, as the majority claims, it is curious, then, that the majority would need to defend on alternative footing its position that the district court had subject matter jurisdiction based on a motion that purported to reopen the case. It is undisputed that the parties did not consummate settlement prior to the December 31, 1993 deadline, and based on the majority’s view of the conditional effect of the October 14, 1993 order, that solitary fact alone should end the inquiry: no settlement, no dismissal, case continues.
Still, the majority endeavors to justify the existence of subject matter jurisdiction on several alternative bases, each of which becomes transparent when viewed under a more scrupulous microscope.
*227 II.
The Motion to Clarify could be more aptly described as an ancillary and administrative “motion to follow the law” rather than a seminal “motion to reopen,” as the majority views it. As an initial matter, the majority accords much due deference to the district court’s province to interpret its own orders, see ante at 219; that is the law surely enough, and I take no issue with this approach. But the majority is disloyal in its adherence to that framework because the district court itself stated plainly that nobody moved to reopen the case. In the March 15, 2018 order (the order on appeal) regarding Nelson’s motion pursuant to Rules 59(e), 12(b)(1), 12(h)(3), and 60(b), the district court recited the relevant facts of the case as follows: “The case was again dismissed [on October 14, 1993] ‘with right to reopen if settlement is not consummated [sic] before 12/31/1993.’ Nobody moved to reopen the case before the December 31, 1993 deadline.” (J.A. 417 ( [sic] in original) (emphasis added) (quoting entry 117 on the docket sheet).)
If the district court were truly “treat[ing]” the Motion to Clarify as a motion to reopen, as the majority contends, ante at 218-19, one can only assume that the district court would have mentioned that motion at this factual juncture before jumping right into the November 1994 settlement. Perhaps, even if the district court were silent regarding the presence or absence of a motion to reopen, there might be room to debate whether the Motion to Clarify was, in effect, a motion to reopen; but not only did the district court make no mention of the all-important Motion to Clarify, the district court further affirmatively stated that, “Nobody moved to reopen the case before the December 31, 1993 deadline.” Thus, in claiming that the Motion to Clarify was, in essence, really a motion to reopen, the majority all but concludes that the district court committed clear error in its recitation of the facts as stated in the March 15, 2013 order.
Not surprisingly, there is a dearth of record support for the notion that the district court and the parties (referring to RTC, not ORL) treated the Motion to Clarify as a motion to reopen due to failed settlement negotiations. Although I recognize that RTC’s decision to caption the Motion to Clarify as it did — rather than as a “Motion to Reopen” — is not fatal to ORL’s current position, see Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 157 (4th Cir.2012), nowhere in the Motion to Clarify (or the subsequent Amended Order of Foreclosure) are the words “settlement” or “reopen” ever mentioned. That being said, I further recognize that papers filed with the court need not contain any “magic words” to effectuate their purposes. See Stevenson v. City of Seat Pleasant, 743 F.3d 411, 418 (4th Cir.2014). But certainly, if RTC and the district court truly viewed the Motion to Clarify as one to reopen, one would expect that there would be some mention of — or at a bare minimum, a fleeting reference to — the failed settlement negotiations, the December 31, 1993 deadline to settle, or the October 14, 1993 dismissal order setting forth that deadline.[1] But each of these telltale clues that the parties and the district court treated the Motion to Clarify as one to reopen are apparitions.
Aside from RTC’s request to waive its claim for a deficiency judgment (which I address in greater detail below), the Mo *228 tion to Clarify essentially asked the district court to follow the proper procedure for foreclosing on a property pursuant to a judicial sale where the Office of the U.S. Marshal has not seized the property which is the subject of the action; in short, the Motion to Clarify simply asked the district court to follow the law. The majority elevates the district court’s proper application of the rule of law as effecting “procedural and substantive changes to the provisions for the foreclosure sale,” ante at 218, but ignores the fact that the foreclosure sale was a foregone conclusion, and the requested relief regarding the legally proper procedure for executing the sale had no bearing on any pending settlement agreement. At the end of the day, all RTC was doing was getting its ducks in a row to prepare for what was inevitable.
The principal flaw of the majority’s view that the Motion to Clarify somehow reopened the case is to read that motion in a piecemeal fashion. The majority provides a lone purportedly “good reason” for why the parties and the district court treated the Motion to Clarify as a motion to reopen: Nelson supposedly had an interest in the Motion to Clarify because “a reduction [in commission awarded to the Office of the U.S. Marshal] could only redound to the benefit of the guarantors.” Ante at 219. But this rationale relies on an incomplete reading of the Motion to Clarify and a fundamental misunderstanding of the nature of the foreclosure proceedings. And just as with the majority’s high-level comparison of the facts of Kokkonen with the facts of this case, the Devil is in the details.
In addition to seeking to limit the commission to the Office of the U.S. Marshal, the Motion to Clarify also sought to waive RTC’s right to a deficiency judgment against Nelson on both mortgages. A deficiency judgment is “[a] judgment against a debtor for the unpaid balance of the debt if a foreclosure sale ... fails to yield the full amount of the debt due.” Black’s Law Dictionary 918-19 (9th ed.2009). Thus, when RTC waived its right to a deficiency judgment, RTC essentially let Nelson “off the hook” for any discrepancy between the amount that RTC would obtain from the foreclosure sale and the remaining balance owed on the loans. Nelson therefore had no interest in whether the Office of the U.S. Marshal received a commission because he was not required to make up the difference to RTC, even if precluding the Office of the U.S. Marshal from receiving a commission would benefit RTC directly.
Indeed, if Nelson was so interested in the Motion to Clarify, as the majority claims, query then: why did he not file any motions or other papers either supporting or opposing that motion? Instead, rather than taking a position — any position — on the Motion to Clarify, Nelson was an absolute ghost on the docket sheet from at least as early as the October 14, 1993 dismissal order until 2011 after ORL entered the confession of judgment. In fact, the only “parties” who appear to have participated in the hearing regarding the issues raised in the Motion to Clarify were RTC and the U.S. Attorney’s Office on behalf of the Marshal’s Service — not Nelson. (See J.A. 56 ¶ 10; id. at 57 ¶ 15.)
By reading in a silo-like fashion RTC’s separate prayers for relief in the Motion to Clarify, the majority misses the big picture, and its “good reason” for treating the Motion to Clarify as a motion to reopen is gainsaid by the very document that it relies upon.
III.
The majority makes two other arguments to support its position; but like the arguments before them, these arguments *229 similarly fall short and incomplete of the jurisdictional goal line.
1.
First is the notion that “[t]he procedural posture of the case after December 31, 1993 mirrors what happened earlier in the case,” ante at 219, specifically, what happened ninety-three days after the district court entered its July 13, 1993 dismissal order. That order stated: “IT IS ORDERED that this action is hereby dismissed without costs and without prejudice to the right, upon good cause shown within ninety (90) days, to reopen the action is settlement is not consummated.” Although the district court did reopen the case after expiration of the ninety-day period, a plain reading of that order reveals that it was not the reopening of the case that must have occurred within ninety days, but rather the showing of good cause to reopen. In the March 15, 2013 order, the district court recounted the relevant facts surrounding the reopening of the case after the July 13,1993 dismissal order as follows: “The case was closed on that same day, but the parties later returned to court. Although the docket does not reflect the date on which the parties asked for the case to be reopened, the court reopened the case 93 days after the July 13, 1993 Order.”[2] (J.A. 416.)
Accordingly, because we do not know when, exactly, the parties came to the court to reopen the case, the majority’s statement that the district court “nonetheless reopened the case 93 days after the case was closed,” ante at 219, is nothing but a red herring — a straw-man that, even when set ablaze, sheds no light on the relevant issue. At best for the majority, the circumstances surrounding the district court’s handling of the July 13, 1993 dismissal and reopening of the case are neutral.[3]
2.
Finally, the majority attempts to make hay by putting a spin on the absence of a clerical order of dismissal following the October 14, 1993 order (whereas the clerk entered such an order subsequent to the July 13, 1993 dismissal order). This argument invokes the classic tale of the dog that did not bark in the night-time. See *230 generally Arthur Conan Doyle, The Silver Blaze, in The Memoirs of Sherlock Holmes (1892). To wit, the conspicuous absence of any subsequent dismissal order indicates that the October 14, 1993 order was intended to serve as such. The order’s effect, therefore, is best understood by looking at what order did not follow. (It is surprising that the majority would even attempt to make this absent-order argument in view of its due deference to the district court’s autonomy and handling of its own docket. See ante at 219. For indeed, the district court itself noted that when it reopened the case after the July 13, 1993 dismissal order, the parties’ request that it do so is “not reflect[ed]” on the docket sheet. (J.A. 416.))
Regardless, I agree with the majority that the October 14, 1993 order was not a “final” order at the time that it was entered; but it became final on January 1, 1994, when the period for reopening the case expired without settlement and without either party moving to reopen. At this point, the district court became divested of subject matter jurisdiction. The majority’s contrary result above runs afoul of well-settled law and, regrettably, all but creates an undesirable circuit split.
In Berke v. Bloch, a case with facts and dismissal language very similar to the facts and dismissal language in this case, the district court dismissed a lawsuit “ ‘without costs and without prejudice to the right, upon good cause shown, within 60 days, to reopen the action if the settlement is not consummated.’ ” 242 F.3d 131, 134 (3d Cir.2001). “[T]he [plaintiffs] undertook no action within the prescribed sixty (60) day period following entry of the District Court’s order.” Id. The Third Circuit, in concluding that the order dismissing the case constituted a final order, stated the following:
When a District Court dismisses a case pending settlement, and grants the [plaintiffs] leave to re-file within a set period of time, the order cannot be considered final for the purposes of appeal on the date it was entered. Typically, conditional dismissals based on imminent settlement include a fixed period of time to reach settlement terms. While these types of dismissals may keep the parties’ “feet to the fire” by giving them a deadline to conclude settlement, they cannot be considered final. Instead, if terms are reached, and/or the plaintiff makes no attempt to re-open the litigation, the order ripens into a final, appealable order upon the expiration of the fixed time period.
Id. at 135 (emphasis added); see Longo v. First Nat’l Mortg. Sources, 523 Fed.Appx. 875, 877-78 (3d Cir.2013) (applying the rule from Berke and stating the following: “In its May 9 Order, the District Court dismissed the case ‘without prejudice to the right, upon good cause shown within 60 days, to reopen the action if the settlement is not consummated.’ Thus, the May 9 Order ... bec[a]me final ... 60 days after it was entered[.]”).
The result is no different in this case. Jung v. K. & D. Mining Co., 356 U.S. 335, 337, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958) (per curiam) (holding that a court order “dismissing ‘th[e] cause of action’” — not the clerk’s subsequent entry of a judgment — is what “constituted the ‘final judgment’ in the case,” even though the Rule 58 clock to appeal did not start to tick until separate entry of that judgment (second internal quotation marks added)); see also Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th Cir.1994) (holding that an “Administrative Closing Order [giving] the parties sixty days to reopen the proceedings .... mature[d] into final judgment and, [because] no action [was] taken to resolve the case, satisfie[d] the separate *231 document requirement of Rule 58” (citation omitted)).
IV.
In sum, Kokkonen controls: the convoluted procedural and substantive morass that this twenty-year-old case became is partly the product of the failure by the parties and the district court to notice that, when all was said and done, what the court was being asked to do in granting judgment on the confession was simply enforcing the settlement agreement. The dismissal order respecting that agreement did not “embody” the agreement or “retain jurisdiction” over it. Kokkonen, 511 U.S. at 381-82, 114 S.Ct. 1673. Moreover, because the Motion to Clarify did not seek to reopen the case, as a careful review of that motion and the subsequent related order plainly reveals, the October 14, 1993 order matured into a final dismissal order on January 1, 1994.
With great condemnation for Nelson’s unlawful and evasive behavior, and with sympathy for ORL’s struggles to obtain the money that it appears to be rightfully owed, I simply do not think that the district court had subject matter jurisdiction. I therefore would not reach the merits of ORL’s claim and, very respectfully, dissent to Part II.A.1 of the majority’s opinion.

. By glaring contrast, in the October 14, 1993 order, the district court refers expressly to (1) the July 13, 1993 order of dismissal and (2) the fact that the parties were "unable to complete the documentation of the settlement.” (J.A. 50.)

. I note that the March 15, 2013 order is the exact same order wherein the district court stated that, subsequent to the October 14, 1993 order, "Nobody moved to reopen the case before the December 31, 1993 deadline.” (J.A. 417.) Thus, inasmuch as the district court recited that "the parties asked for the case to be reopened” after the July 13, 1993 order, but on the very next page of that order recited that the parties did not "move[] to reopen the case before the December 31, 1993 deadline," the court was perfectly capable of determining what constituted a motion/request to reopen. This only further pulls the rug out from under the majority's supposition that the district court somehow treated the Motion to Clarify as a motion to reopen.

. But in reading Part II.A. 1 of the majority opinion as a whole, the notion that "[tjhe procedural posture of the case after December 31, 1993 mirrors what happened earlier in the case” based on "nearly identical” language in the dismissal orders, ante at 219, only further undermines the "conditional dismissal” theory, If the language in the two dismissal orders is "nearly identical,” one would expect that the effect of that language would also be nearly identical. Under the "conditional dismissal” theory, the case was ■at no point in time ever actually closed/dismissed pursuant to the July 13, 1993 order because dismissal was conditioned upon settlement and the parties did not settle. Yet, the district court thought that it needed to reopen the case and did so on October 14, 1993, due to "the parties [being] unable to complete the documentation of the settlement.” (See J.A. 50.) But if the case was never actually closed/dismissed, why would the district court have thought that the case needed to be "reopened”?